United States District Court

For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SUSAN RENE JONES,

           Plaintiff,

    v.

METROPOLITAN LIFE INSURANCE CO.,
et al.,

           Defendants.

No. C-08-03971-JW (DMR)

**REDACTED ORDER GRANTING IN
PART AND DENYING IN PART
DEFENDANTS' SUPPLEMENTAL AND
AMENDED MOTION TO STRIKE**

Before this Court are allegations regarding repeated disclosures by Plaintiff's counsel, Robert Nichols,[1] of confidential statements purportedly made during a court-sponsored mediation session in violation of the Court's Local Rules for Alternative Dispute Resolution ("ADR Local Rules"). Defendants Merck & Co., Inc. Long Term Disability Plan for Non-Union Employees, as administered by Metropolitan Life Insurance Company (collectively, "Defendants"), have moved to strike the disclosures of such confidential communications from various public filings before the Court. *See* Docket No. 108 (hereinafter "Amended Motion to Strike"). Defendants' Amended Motion to Strike was referred to this Court for adjudication as a non-dispositive motion by the District Judge.

---

[1] At oral argument on this matter, Nichols stated that the decision to disclose these statements was made solely by him, and not in consultation with Plaintiff. Therefore, throughout this opinion, the Court names Nichols in relation to such disclosures in order to distinguish his conduct and decision-making from that of his client's.

United States District Court

For the Northern District of California

1    Having carefully considered the parties' briefs and accompanying submissions, as well as the

2    oral argument of counsel, the Court hereby GRANTS in part and DENIES in part Defendants'

3    Amended Motion to Strike, and DENIES Defendants' request for sanctions under 28 U.S.C. §1927.

4    This Order contains references to specific confidential statements made in the course of mediation

5    and negotiation sessions, and also makes reference to a disposition in a related confidential

6    complaint made under ADR Local Rule 2-4.  For these reasons, the Court files portions of this Order

7    under seal in order to preserve the confidentiality of ADR statements and proceedings.

## I.  <u>BACKGROUND</u>

**A.**   **<u>Procedural History</u>**

On August 20, 2008, Plaintiff filed an action under the Employee Retirement Income

Security Act of 1974 ("ERISA"), *see* 29 U.S.C. § 1001, *et seq.*, in which she sought reinstatement of

her long-term disability ("LTD") benefits from Defendants Merck & Co., Inc. LTD Plan for Non-

Union Employees (the "Plan"), as administered by Metropolitan Life Insurance Company.  *See*

Docket No. 1.  Defendants had terminated Plaintiff's LTD benefits as of April 13, 2007.  *See* Docket

No. 1 (Complaint ¶¶ 10-11).  Plaintiff's complaint consisted of a single cause of action seeking LTD

benefits under ERISA § 502 (a)(1)(B), retroactive to the date of termination.  *See id.* (Complaint ¶¶

17-19).

    1.   <u>Participation in court-sponsored mediation.</u>

This case was assigned to the Court's ADR Multi-Option Program governed by ADR Local

Rule 3.  *See* Docket No. 6.  Under ADR Local Rule 3, parties are "presumptively required to

participate in one non-binding ADR process offered by the Court (Arbitration, Early Neutral

Evaluation, or Mediation) or, with the assigned Judge's permission, may substitute an ADR process

offered by a private provider."  *See* ADR L.R. 3-2.  On March 5, 2009, the parties stipulated to

court-sponsored mediation under ADR Local Rule 6.  *See* Docket No. 28.  The Clerk of the Court

subsequently appointed a mediator on April 27, 2009.  *See* Docket No. 30.  On July 30, 2009, the

mediator conducted a mediation session, for which counsel signed a confidentiality agreement

consistent with and specifically referencing the ADR Local Rule governing the confidentiality of

mediation sessions.  *See* Docket No. 31; ADR L.R. 6-12 (c) (providing that mediator may ask the

**United States District Court**
For the Northern District of California

1    parties and all persons attending the mediation to sign a confidentiality agreement on a form

2    provided by the court).  The matter did not settle.  *See* Docket No. 31.

3        2.    <u>Sequence of disclosures.</u>

4        In a letter dated September 4, 2009, Defendants' counsel informed Nichols that Plaintiff's

5    claim for LTD benefits was "being reinstated, retroactive to the date it was terminated, subject to all

6    of the terms and conditions of the Plan."  *See* Docket No. 118 (Order at 2:25 - 3:2).  Defendants'

7    letter advised Nichols that the reinstatement of benefits "entirely moots the litigation."  *See id.*

8    (Order at 3:2-3).  Subsequently, Defendants filed a notice to inform the Court of the need for a

9    further case management conference due to the reinstatement of Plaintiff's benefits.  *See* Docket No.

10    34.

11        On September 22, 2009, Plaintiff filed a Response to Defendants' Request for Further Case

12    Management Conference, Docket No. 36, in which Nichols included statements purportedly made

13    by the mediator in conveying positions taken by Defendants at the court-sponsored mediation

14    session on July 30, 2009, as well as subsequent settlement negotiations between the parties.  In an

15    attempt to persuade Nichols to remove the confidential mediation and settlement statements from the

16    public record, Defendants' counsel engaged in numerous meet and confer efforts with Nichols from

17    October through November 2009.  *See* Docket No. 109 (Hull Decl. ¶ 3) (recounting five email and

18    letter attempts).  After Nichols refused to stipulate to removal of the confidential information from

19    the record, on December 16, 2009, Defendants filed an initial motion to strike Docket No. 36 from

20    the record. *See* Docket No. 41.  The motion was set for hearing in March 2010, but as described

21    below, subsequently was referred to a magistrate judge for disposition.

22        In opposition to Defendants' initial motion to strike, Plaintiff filed Docket No. 86, in which

23    Nichols again revealed confidential mediation statements.  In addition, while Defendants' initial

24    motion to strike was pending, the parties filed respective motions for summary judgment.  Plaintiff

25    filed a series of documents (Docket Nos. 46, 47, 48, 49, 50, 72, 85, 87, 94, and 95) in support of

26    Plaintiff's summary judgment motion and motion for leave to file an amended complaint in the

27    alternative, and in opposition to Defendants' cross-motion for summary judgment, in which Nichols

28

United States District Court

For the Northern District of California

1    yet again divulged confidential mediation information.  In fact, as an exhibit to Docket No. 87,

2    Nichols attached a copy of Defendants' entire mediation brief.

3         From mid-May 2010 through the beginning of June 2010, Defendants' counsel attempted an

4    informal resolution of the motion to strike through the ADR Director's office, per ADR Local Rule

5    2-4 (a).  However, such attempts proved unsuccessful.

6         3.    Referral of Amended Motion to Strike to this Court and Defendants' ADR

7               Complaint.

8         On May 19, 2010, Defendants' initial motion to strike was referred to ADR Magistrate Judge

9    Laporte for resolution.  *See* Docket No. 101.  On June 4, 2010, Defendants filed the instant

10   Amended Motion to Strike, *see* Docket No. 108, which superseded the initial motion to strike.  In

11   addition to a request to strike Docket No. 36 in its entirety, Defendants requested that the Court

12   strike portions of the numerous documents filed by Plaintiff subsequent to Docket No. 36 (Docket

13   Nos. 46, 47, 48, 49, 50, 72, 85, 86, 94, and 95, and Defendants' mediation brief attached as an

14   exhibit to Docket No. 87).

15        On June 14, 2010, Judge Laporte recused herself from this matter.  *See* Docket No. 114.

16   Defendants' Amended Motion to Strike was then referred to the undersigned for adjudication.

17        On July 8, 2010, Judge Ware granted Defendants' motion for summary judgment and denied

18   Plaintiff's cross-motion for summary judgment.  *See* Docket No. 118.  Judge Ware reasoned that the

19   reinstatement of Plaintiff's benefits resolved and therefore mooted her sole claim for relief.  *See id.*

20   (Order at 5:15-16).  Final judgment was entered in favor of Defendants, but the Court retained

21   jurisdiction to resolve Defendants' Amended Motion to Strike.  *See* Docket No. 119.

22        On July 15, 2010, Defendants lodged an ADR Complaint against Nichols under ADR Local

23   Rule 2-4, which subsequently was referred to this Court for resolution due to Judge Laporte's

24   recusal.[2]  *See* Docket No. 125.  Because Defendants' Amended Motion to Strike and ADR

25   _____

26        [2]  Pursuant to the ADR Local Rules, the ADR Magistrate Judge "shall hear and determine all
     complaints alleging violations of the[] ADR local rules."  *See* ADR L.R. 2-2.  Accordingly, such

27   complaints must be lodged, not filed, directly with the ADR Magistrate Judge and must not be
     disclosed to the assigned trial judge.  *See* ADR L.R. 2-4(b)(1).  Sanctions proceedings before the

28   ADR Magistrate Judge in response to a complaint are conducted on the record but under seal, and
     any objections to an order resolving the sanctions issue must be made to the General Duty Judge, not

United States District Court

For the Northern District of California

1    Complaint concern the same alleged violations by Nichols and seek sanctions against him, this Court

2    ordered the parties to consolidate all further briefing on these matters, without objection from the

3    parties.  Accordingly, Plaintiff filed a consolidated opposition to Defendants' Amended Motion to

4    Strike and ADR Complaint, to which Defendants filed a consolidated reply brief.  All briefs were

5    filed under seal to protect ADR confidentiality.

6        On August 12, 2010, after Plaintiff's opposition to the Motion to Strike was due and had

7    been submitted, Nichols, who averred he had recently retained counsel to represent his personal

8    interests in these proceedings, requested leave to file excess pages to respond to Defendants' request

9    for sanctions in the Amended Motion to Strike and ADR Complaint.  The Court granted Nichols'

10   request.  *See* Docket No. 137.  Nichols was therefore permitted to submit an additional brief on the

11   issue of sanctions against him, and Defendants were permitted to file a surreply.  *See id*.

12       On September 23, 2010, the Court conducted a hearing on the record but under seal to

13   preserve ADR confidentiality.  The Court first heard arguments and ruled on Defendants' Amended

14   Motion to Strike and request for sanctions under 28 U.S.C. §1927, and then conducted the hearing

15   on Defendants' ADR Complaint and request for sanctions under the ADR Local Rules.[3]

16   **B.**    **Categories of Disclosures by Nichols**

17       The disclosures made by Nichols fall into these two categories:

18       (1) disclosures regarding various statements purportedly made during the court-sponsored

19   mediation on July 30, 2009 (as reiterated by Nichols in portions of Docket Nos. 36, 46, 47, 48, 49,

20   50, 72, 85, 86, 94, and 95), as well as the disclosure of Defendants' confidential mediation brief

21   submitted for the court-sponsored mediation (attached as Exhibit 75 to Docket No. 87); and

22       (2) a disclosure of post-mediation settlement negotiations between the parties referenced in

23   one paragraph of Docket No. 36.

---

25   the trial judge.  *See* ADR L.R. 2-4(c).  "One purpose of committing this responsibility to one
     designated magistrate judge is to preserve the confidentiality of ADR communications to the fullest
26   extent possible – and to assure litigants that no such communications will be disclosed to any judge
     who could exercise power over the parties' rights in the underlying case."  *In re Prohibition Against*
27   *Disclosing ENE Communications to Settlement Judges*, 494 F. Supp. 2d 1097, 1097 n.1 (N.D. Cal.
     2007).

28       [3]  The Court will issue a separate written opinion regarding Defendants' ADR Complaint.

United States District Court

For the Northern District of California

1       At oral argument, the parties agreed that of the twelve public filings at issue, eleven *solely*

2   involve disclosures of statements purportedly made as part of the court-sponsored mediation, plus

3   Defendants' mediation brief.  Only Docket No. 36 relays post-mediation settlement communications

4   (in lines 5-9 on page 4), in addition to mediation information.

5       With respect to the first category, Nichols claims that his disclosures involved statements

6   allegedly made by Defendants to the mediator, who then allegedly conveyed the information to

7   Nichols.  **\*\*\* CONTENTS OF MEDIATION COMMUNICATIONS FILED UNDER**

8   **SEAL\*\*\***

9

10

11       Nichols contends these statements comprise the basis of "new

12   independent claims" for unlawful retaliation, breach of fiduciary duty, and ERISA benefits not

13   subject to an impermissible offset.  As conceded by Nichols at oral argument, Plaintiff has not been

14   reexamined and she continues to collect her benefits under the Plan.  Thus, Plaintiff's purported new

15   claims are premised on alleged future harms that have not even occurred.

16       With respect to the second category regarding the single confidential settlement (that is, non-

17   mediation) disclosure, Nichols claims that, **\*\*\* CONTENTS OF SETTLEMENT**

18   **NEGOTIATIONS FILED UNDER SEAL\*\*\***

19

20

21       Significantly, Nichols conceded that he never sought prior approval of the Court – and that

22   nothing prevented him from doing so – before publicly disclosing the confidential mediation and

23   settlement information.

24       For their part, Defendants strenuously deny that they made any of the statements claimed by

25   Nichols.  To resolve the issue before this Court, it is not necessary to engage in an inquiry as to

26   whether the mediation statements and settlement negotiations disclosed by Nichols are accurate

27   representations of what was actually said or negotiated, or for that matter, to resolve any evidentiary

28   disputes between the parties or determine whether the statements at issue even constitute an

**United States District Court**

For the Northern District of California

1   actionable harm.  The operative point for present purposes is that Nichols himself attributes the

2   statements at issue to court-sponsored mediation or post-mediation settlement negotiations.

3   The singular question that arises, then, is whether disclosure of such information was permissible.

### II.  DISCUSSION

5          The ADR Local Rules, which mandate the confidentiality of court-sponsored mediation

6   with very limited exceptions not applicable here, bar Nichols' disclosure of statements made during

7   the mediation and Defendants' mediation brief.  Nichols' disclosure of further settlement

8   negotiations held between the parties after the mediation session concluded is also improper, based

9   on their irrelevance, inadmissibility, and unfair prejudice.

10          First, the Court will address two threshold matters: jurisdiction and the basis of the Court's

11   power to strike confidential mediation and settlement statements that are improperly part of the

12   record.  Next, the Court will discuss Nichols' disclosures of confidential mediation information in

13   violation of ADR Local Rule 6-12, which governs all but one paragraph of the disclosures at issue,

14   and then turn to Nichols' improper disclosure of settlement negotiations post-mediation in the single

15   paragraph of Docket No. 36.  Finally, the Court will conclude with the issue of sanctions.

16   **A.     Jurisdiction**

17          As a threshold matter, this Court has jurisdiction to resolve Defendants' Amended Motion to

18   Strike.  Without citation to a single case, Nichols argues that the Court lost jurisdiction upon entry of

19   final judgment subsequent to Judge Ware's order on summary judgment disposing of Plaintiff's case.

20   Nichols appears to so contend because many of the disclosures are contained in documents filed by

21   Plaintiff in moving for and opposing summary judgment.  On August 6, 2010, Plaintiff filed a notice

22   of appeal of the summary judgment order.

23          Generally, once a notice of appeal is filed, the district court is divested of jurisdiction *over*

24   *the matters being appealed.  See Natural Res. Def. Council, Inc. v. Sw. Marine, Inc.*, 242 F.3d 1163,

25   1166 (9th Cir. 2001) (purpose of "judge-made" jurisdictional rule is to promote judicial economy

26   and avoid confusion from having the same issues before two courts simultaneously).  However, the

27   court is not divested of jurisdiction over matters collateral to a determination of the merits of the

28   case.  *See United States ex rel. Shutt v. Cmty. Home & Health Care Servs., Inc.*, 550 F.3d 764, 766

1  (9th Cir. 2008) (factual issues are "collateral to the main action" when they involve a "factual

2  inquiry distinct from one addressing the merits"); *Masalosalo v. Stonewall Ins. Co.*, 718 F.2d 955,

3  957 (9th Cir. 1983) (district court retains power to award attorneys' fees after notice of appeal from

4  decision on the merits).

5       In entering final judgment, the District Court expressly reserved jurisdiction over the

6  Amended Motion to Strike. *See* Docket No. 119.  The resolution of the Amended Motion to Strike

7  is collateral to the main action; the sole issue before this Court is whether it was permissible for

8  Nichols to disclose confidential mediation and settlement statements and whether such statements

9  should remain part of the public record in this case.  Indeed, Judge Ware explicitly stated that in

10  deciding the parties' cross-motions for summary judgment, the Court did not rely on Plaintiff's

11  alleged references to confidential communications that are the subject of the Amended Motion to

12  Strike. *See* Docket No. 118 (Order at 4 n.4).  In fact, two of the documents at issue in the Amended

13  Motion to Strike, Docket No. 36 (Plaintiff's Response to Defendants' Request for Further Case

14  Management Conference) and Docket No. 86 (Plaintiff's Opposition to Defendant's initial motion to

15  strike), are not even part of the parties' cross-motions for summary judgment.

16       Furthermore, Plaintiff's own argument in opposition to Defendants' Amended Motion to

17  Strike contradicts the claim that this Court does not have jurisdiction over this matter, by

18  underscoring the collateral nature of the issue presented here.  Plaintiff's opposition centers on the

19  assertion that the disclosures were necessary because they formed the basis of "new independent

20  claims for relief."  But, as Nichols acknowledged at oral argument, these purported new claims are

21  premised on alleged potential future harms that have not occurred.  By his own admission, Nichols

22  disclosed mediation information as putative evidence of *new claims that were not part of the*

23  *complaint upon which summary judgment was granted*, and not as evidence of Plaintiff's single

24  claim at issue on summary judgment.  Thus, this Court's ruling on the Amended Motion to Strike

25  does not involve the same factual inquiry as that to be undertaken on Plaintiff's appeal of the

26  summary judgment order.  The Court therefore has jurisdiction to adjudicate this matter.

27

28

**United States District Court**
For the Northern District of California

8

**B.    Court's Inherent Power to Strike Improper Material from the Record**

As a second threshold consideration, Nichols argues that Federal Rule of Civil Procedure 12(f) only allows courts to strike pleadings, and not other documents such as Plaintiff's Response to Defendants' Request for Further Case Management Conference and motion papers that are at issue here.  Nichols cites *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880 (9th Cir. 1983), in support of his contention.  Nichols misses the point entirely.  The Court is not relying on Rule 12(f); rather, courts have inherent power to strike inappropriate materials such as confidential mediation and settlement information that are improperly part of the public record.

"The inherent powers of federal courts are those which are necessary to the exercise of all others."  *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980) (internal quotation and citation omitted), *superseded by statute on other grounds*, The Antitrust Procedural Improvements Act of 1980, Pub. L. No. 96-349, § 3, 94 Stat. 1154, 1156 (Sept. 12, 1980).  Such inherent powers are ones governed not by rule or statute but "which a judge must have and exercise in protecting the due and orderly administration of justice and in maintaining the authority and dignity of the court...."  *Roadway Express*, 447 U.S. at 764-65 (internal quotations and citations omitted).  Thus, "[i]t is well-established that district courts have inherent power to control their dockets and may impose sanctions...in the exercise of that discretion."  *Atchison, Topeka & Sante Fe Ry. Co. v. Hercules, Inc.*, 146 F.3d 1071, 1074 (9th Cir. 1998) (internal quotation and citation omitted); *see also Chambers v. Nasco, Inc.*, 501 U.S. 32, 44-45 (1991) (noting that "[a] primary aspect of [a court's] discretion [under its inherent powers] is the ability to fashion an appropriate sanction for conduct which abuses the judicial process" and finding that since outright dismissal of a lawsuit is within the court's discretion, a less severe sanction is also within a court's inherent power).

Therefore, based on its inherent powers, a court may strike material from the docket, including portions of a document, reflecting procedural impropriety or lack of compliance with court rules or orders.  *See, e.g., Reddy v. JP Morgan Chase Bank*, No. 2:09-cv-1152, 2010 WL 3447629 at *3 (S.D. Ohio Aug. 30, 2010) (court has inherent power to strike filings that do not comply with court rules); *Zep, Inc. v. Midwest Motor Supply Co.*, No. 2:09-cv-760, __ F. Supp. 2d __, 2010 WL 2572129, at *2-3 (S.D. Ohio June 22, 2010) (portions of reply brief ordered stricken

**United States District Court**
For the Northern District of California

1   based on court's inherent power to control docket because they supported claim for which party had

2   not moved for summary judgment); *Wright v. American's Bulletin*, No. CV 09-10-PK, 2010 WL

3   816164, at *13 (D. Or. March 9, 2010) ("[i]t is clear that [a court's] inherent power includes the

4   authority to sanction procedural impropriety in an appropriate manner, including by striking

5   impertinent documents from the docket") (citations omitted); *Timbisha Shoshone Tribe v. Kennedy*,

6   No. CV F 09-1248 LJO SMS, 2010 WL 582054, at *2 (E.D. Cal. Feb. 18, 2010) (court may strike

7   an untimely-filed document using its inherent powers to manage and control its docket and as

8   sanction for violating court order); *Centillium Commc'ns, Inc. v. Atl. Mut. Ins. Co.*, No. C 06-07824

9   SBA, 2008 WL 728639, at *6 (N.D. Cal. March 17, 2008) (procedurally improper motion ordered

10  stricken pursuant to court's inherent power to control its docket); *ABM Indus., Inc. v. Zurich Am.

11  Ins. Co.*, No. C 05-3480 SBA, 2006 WL 2595944, at *9 (N.D. Cal. Sept. 11, 2006) (paragraphs of

12  affidavit revealing mediation statements ordered stricken because violated Southern District of

13  Texas local rule requiring confidentiality and prohibiting disclosure of all communications made in

14  ADR proceedings).

15  **C.    Disclosures of Court-sponsored Mediation Information**

16      1.    The Court's ADR Program and Local Rules.

17      In passing the Alternative Dispute Resolution Act of 1998 ("ADR Act"), Congress declared

18  its "view on the importance of alternative dispute resolution, and the need for confidentiality...."

19  *Fields-D'Arpino v. Rest. Assocs., Inc.*, 39 F. Supp. 2d 412, 417 (S.D.N.Y. 1999); *see also Olam v.

20  Cong. Mortgage Co.*, 68 F. Supp. 2d 1110, 1121 (N.D. Cal. 1999) (noting that the ADR Act

21  "includes an express statement of federal policy that communications occurring in mediations

22  sponsored by federal district courts should be confidential").  Under the ADR Act, each federal

23  district court is required by local rule to authorize the use of alternative dispute resolution processes

24  in all civil actions and to devise and implement its own alternative dispute resolution program.  *See*

25  28 U.S.C. § 651 (b).  The ADR Act further requires that "each district court shall, by local

26  rule...provide for the confidentiality of the alternative dispute resolution processes and to prohibit

27  disclosure of confidential dispute resolution communications."  28 U.S.C. § 652 (d).

28

Accordingly, this district promulgated the ADR Local Rules, which supplement the Civil Local Rules and generally apply to all civil actions filed in the district. *See* ADR L.R. 1-2. Per Congressional mandate, the ADR Local Rules provide for the confidentiality of court-sponsored mediation sessions. *See* ADR L.R. 6-12.

    2.    ADR Local Rule 6-12.

ADR Local Rule 6-12 states, in relevant part:

> **(a) Confidential Treatment.** Except as provided in subdivision (b) of this local rule, this court, the mediator, all counsel and parties, and any other persons attending the mediation shall treat as "confidential information" the contents of the written Mediation Statements, anything that happened or was said, any position taken, and any view of the merits of the case expressed by any participant in connection with any mediation. "Confidential information" shall not be:
>
> > **(1)** disclosed to anyone not involved in the litigation;
> >
> > **(2)** disclosed to the assigned judge; or
> >
> > **(3)** used for any purpose, including impeachment, in any pending or future proceeding in this court.
>
> **(b) Limited Exceptions to Confidentiality.** This rule does not prohibit:
>
> > **(1)** disclosures as may be stipulated by all parties and the mediator;
> >
> > **(2)** disclosures as may be stipulated by all parties, without the consent of the mediator, for use in a subsequent confidential ADR or settlement proceeding;
> >
> > **(3)** a report to or an inquiry by the ADR Magistrate Judge pursuant to ADR L.R. 2-4 regarding a possible violation of the ADR Local Rules;
> >
> > **(4)** the mediator from discussing the mediation with the court's ADR staff, who shall maintain the confidentiality of the mediation;
> >
> > **(5)** any participant or the mediator from responding to an appropriate request for information duly made by persons authorized by the court to monitor or evaluate the court's ADR program in accordance with ADR L.R. 2-6; or
> >
> > **(6)** disclosures as are otherwise required by law.

Thus, ADR Local Rule 6-12 sets forth a general prohibition on disclosure of information from the court-sponsored mediation, subject to narrow exceptions permitting disclosure. The Commentary to the Rule explains that limited circumstances may nonetheless exist in which the general prohibition on disclosure may give way to a countervailing need to reveal the information. *See* ADR L.R. 6-12, Commentary (stating that "[t]he law may provide some limited circumstances

United States District Court

For the Northern District of California

1  in which the need for disclosure outweighs the importance of protecting the confidentiality of a

2  mediation"). Such circumstances include threats of death or substantial bodily injury; use of

3  mediation to commit a felony; right to effective cross examination in a quasi-criminal proceeding;

4  duty to report lawyer misconduct; and the need to prevent manifest injustice. *See id*. A court

5  presented with such a circumstance may engage in a balancing test: "Accordingly, after application

6  of legal tests which are appropriately sensitive to the policies supporting the confidentiality of

7  mediation proceedings, the court may consider whether the interest in mediation confidentiality

8  outweighs the asserted need for disclosure." *See id*. The Commentary concludes by noting that

9  "[n]othing in this commentary is intended to imply that, absent truly exigent circumstances,

10  confidential matters may be disclosed *without prior approval by the court*." *See id*. (emphasis

11  added). Significantly, when the ADR Local Rules were amended effective January 2009, the

12  Commentary *added* this final sentence underscoring the need of prior court approval for any

13  disclosures otherwise prohibited. *Compare* ADR L.R. 6-11, Published December 2005, *with* ADR

14  L.R. 6-12, Published December 2008.

15         3.   <u>Instructive advisory opinions from ADR Magistrate Judges in this district.</u>

16      "District courts have broad discretion in interpreting and applying their local rules."

17  *Miranda v. S. Pac. Transp. Co.*, 710 F.2d 516, 521 (9th Cir. 1983) (citation omitted). Although

18  there are no published decisions in this district squarely addressing the precise issue at hand, two

19  recent advisory opinions by the current and former ADR Magistrate Judges[4] of this Court are highly

20  instructive.[5]

---

22      [4] ADR Local Rule 2-2 provides: "The Court shall designate one of its magistrate judges as
23  the ADR Magistrate Judge. The ADR Magistrate Judge is responsible for overseeing the
    ADR Unit, consulting with the ADR Director and legal staff on matters of policy, program design
24  and evaluation, education, training and administration...."

25      [5] In addition, courts outside this circuit have found disclosure of confidential settlement or
    mediation information improper based on local rules requiring confidentiality. *See, e.g.*, *In re Lake
26  Utopia Paper Ltd.*, 608 F.2d 928, 929 (2d Cir. 1979) (holding that disclosure of confidential
    statements made in a pre-argument settlement conference, which took place in accordance with
27  Second Circuit's Civil Appeals Management Plan to resolve cases on appeal, was "highly improper
    and will not be condoned"); *Clark v. Stapleton Corp.*, 957 F.2d 745, 746 (10th Cir. 1992)
28  (emphasizing that "revealing statements or comments made at a settlement conference is a serious
    breach of confidentiality").

United States District Court
For the Northern District of California

1    In a 2009 opinion, ADR Magistrate Judge Laporte examined facts closely paralleling the

2   situation at bar.  *See* ADR Local Rule Decision 09-001 (hereinafter, "ADR Decision 09-001"),

3   located at http://www.adr.cand.uscourts.gov/.[6]  In the case before Judge Laporte, it was undisputed

4   that plaintiffs had filed six motions briefly discussing the court-sponsored mediation process and

5   substance of the parties' mediation, and had attached a redlined, unsigned version of a settlement

6   agreement to the motions.  *See* ADR Decision 09-001 at 2:16-21.  Alleging violations of the

7   confidentiality provisions of ADR Local Rule 6-12, defendants moved to strike each of the six

8   motions and filed an ADR complaint.  *See id.* at 2:21-26.  Although plaintiffs argued that they had

9   disclosed mediation information in order to establish that a settlement had in fact been reached and

10  to prevent manifest injustice, Judge Laporte found that the exception for "disclosures as are

11  otherwise required by law" under ADR Local Rule 6-12(b)(6) did not apply.  *See id.* at 4:26-28,

12  5:12-19.  In so ruling, Judge Laporte found that plaintiffs could and should have sought court

13  approval before disclosing the confidential mediation information, but failed to do so.  *See id.* at

14  6:10-12.  Stressing the importance of obtaining prior court approval, Judge Laporte concluded by

15  admonishing plaintiffs for revealing confidential mediation information:

16      "Plaintiffs, like all counsel who practice in this Court, are presumed to know the ADR
        Local Rules, and [p]laintiffs do not claim ignorance of the Rules as a defense.  If [p]laintiffs
17      wished to rely on an unsigned, redlined settlement document, they could have, and *should
        have*, first requested permission from the trial judge to make reference to and attach those
18      materials to the six motions.  If [p]laintiffs had filed a motion requesting that the trial judge
        give them permission to include these materials with a careful explanation avoiding
19      reference to confidential information about the mediation, this entire situation could have
        been avoided.  Defendants could have opposed the motion.  And the trial judge would then
20      have been able to perform the balancing test ... weighing mediation confidentiality against
        the asserted need for disclosure to prevent a manifest injustice."  *See id.* at 6:9-18 (emphasis
21      in original).

22      Analogously, in *In re Prohibition Against Disclosing ENE Communications to Settlement

23  Judges*, 494 F. Supp. 2d 1097 (N.D. Cal. 2007), former ADR Magistrate Judge Brazil emphasized

24  the importance of maintaining the confidentiality of Early Neutral Evaluation ("ENE") sessions,

25

26      [6]  This opinion is posted on the Court's ADR website and has been redacted to protect the
    parties' anonymity and adhere to the ADR Local Rule regarding confidentiality (the original opinion
27  has been filed under seal).  The ADR website notes: "The [o]rder [Judge Laporte] issued in that case
    provides important guidance on issues regarding mediation confidentiality and attorney conduct
28  which [Judge Laporte] and the ADR Program legal staff believe will be helpful...to counsel
    appearing in [the Northern District of California]."  *See* http://www.adr.cand.uscourts.gov/.

United States District Court
For the Northern District of California

1    one of the ADR processes offered by the Court.[7]  *See* ADR L.R. 3-2.  Judge Brazil explained that

2    "[i]n framing...provisions of ADR Local Rule 5-12 it was the Court's intention to impose a broad

3    prohibition on disclosing ENE communications and then to identify, in the second subsection, the

4    *only* exceptions to that broad prohibition.... Thus, if the general prohibition applies, disclosure of an

5    ENE communication is permitted only in the five circumstances specified in the 'exceptions

6    subsection' – and in no others."[8]  *In re Prohibition Against Disclosing ENE Communications*, 494

7    F. Supp. 2d at 1099 (emphasis in original).  Accordingly, the framers of the Rule intended to "limit

8    the field of persons to whom disclosures were permitted" and to prohibit the use of ENE

9    communications "for any purpose," a phrase which "contains no limitations."  *Id.* at 1100-01

10   (emphasis omitted).  Observing that "a primary purpose of the pertinent [ADR] Local Rules is to

11   encourage litigants and their lawyers to be as forthcoming and frank as possible in ENE sessions,"

12   Judge Brazil concluded that "the drafters intended the ENE Local Rules to protect the

13   confidentiality of ENE communications to the maximum extent possible."  *Id.* at 1101, 1108.

14   Finally, similar to Judge Laporte's admonition to plaintiffs in ADR Decision 09-001, Judge Brazil

15   emphasized the importance of seeking prior approval:

16       "It is important to emphasize, at the outset, that the lawyer who disclosed the evaluator's
         assessment of the case did not first seek permission to do so from opposing counsel and
17       from the evaluator.  Had such permission been sought and given, no violation of the ADR
         Local Rules would have occurred."  *Id.* at 1098.
18

19       4.    Nichols' disclosures in violation of ADR L.R. 6-12.

20       As a preliminary matter, the Court stresses two foundational principles.

21       [7]   Although this case addresses the confidentiality of ENE sessions under ADR L.R. 5-12,
22   the structure and language of ADR L.R. 5-12 *mirror* that of ADR L.R. 6-12.  Specifically, both
     ADR rules begin by setting forth, in the first section of the rule, a general prohibition against
23   disclosure of the contents of written ADR statements and of communications during ADR sessions;
     and both ADR rules then proceed to identify "limited exceptions to confidentiality."  *See* ADR L.R.
24   5-12; ADR L.R. 6-12; *In re Prohibition Against Disclosing ENE Communications*, 494 F. Supp. 2d
     at 1099.  Furthermore, though ENE sessions differ from mediation sessions, the same principles
25   regarding confidentiality apply in like fashion to ENE and mediation, as reflected by the fact that the
     ADR Local Rules governing the confidential treatment of both ADR processes are identical.

26       [8]   In January 2009, ADR Local Rule 5-12 and ADR Local Rule 6-11 (which was renumbered
27   to 6-12) were amended, adding one other "limited exception to confidentiality," namely,
     "disclosures as may be stipulated by all parties, without the consent of the [mediator/evaluator], for
28   use in a subsequent confidential ADR or settlement proceeding."  This amendment does not affect
     the analysis herein.

**United States District Court**
For the Northern District of California

1    First, it is beyond doubt that maintaining the confidentiality of mediation communications is

2  a *sine qua non* for preserving the integrity of court-sponsored mediation sessions.  As the Ninth

3  Circuit has observed, "the success of mediation depends largely on the willingness of the parties to

4  freely disclose their intentions, desires, and the strengths and weaknesses of their case; and upon the

5  ability of the mediator to maintain a neutral position while carefully preserving the confidences that

6  have been revealed...." *In re County of Los Angeles*, 223 F.3d 990, 993 (9th Cir. 2000) (quoting

7  *Poly Software Int'l, Inc. v. Su*, 880 F. Supp. 1487, 1494 (D. Utah 1995)).  Indeed, "[t]he assurance

8  of confidentiality is essential to the integrity and success of the [c]ourt's mediation program, in that

9  confidentiality encourages candor between the parties and on the part of the mediator, and

10  confidentiality serves to protect the mediation program from being used as a discovery tool for

11  creative attorneys." *In re Anonymous*, 283 F.3d 627, 636 (4th Cir. 2002).  As a result, "[c]ourts

12  routinely have recognized the substantial interest of preserving confidentiality in mediation

13  proceedings as justifying restrictions on the use of information obtained during the mediation." *In*

14  *re Anonymous*, 283 F.3d at 634 (citations omitted).  *See also Clark v. Stapleton Corp.*, 957 F.2d

15  745, 746 (10th Cir. 1992) (emphasizing that "the guarantee of confidentiality is essential to the

16  proper functioning of an appellate settlement conference program"); *In re Lake Utopia Paper Ltd.*,

17  608 F.2d 928, 930 (2d Cir. 1979) (noting "[i]t is essential to the proper functioning of the Civil

18  Appeals Management Plan that all matters discussed at these [settlement] conferences remain

19  confidential"); ADR Decision 09-001 at 7:3-5 (commenting that "[c]onfidentiality is such a

20  foundational principle of mediation that every attorney must be held to know that it is improper to

21  include [mediation] information such as [p]laintiffs included in their six motions to the trial judge").

22    Furthermore, "where participation is mandatory and the mediation is directed and

23  sanctioned by the [c]ourt, 'the argument for protecting confidential communications may be even

24  stronger because participants are often assured that all discussions and documents related to the

25  proceeding will be protected from forced disclosure.'" *In re Anonymous*, 283 F.3d at 637 (quoting

26  *Folb v. Motion Picture Indus. Pension & Health Plans*, 16 F. Supp. 2d 1164, 1176 n.9 (C.D. Cal.

27  1998)); *see also Olam*, 68 F. Supp. 2d at 1124 ("[w]e assume that when it adopted § 652 (d)

28  Congress' primary purpose was to encourage maximum use of court-sponsored mediation

**United States District Court**
For the Northern District of California

1    opportunities, and that Congress believed that litigants and lawyers would not realize the full

2    potential of mediation unless they believed the proceedings would be confidential").

3           Accordingly, the ADR Local Rules were drafted with the intent of protecting the

4    confidentiality of mediation communications, like ENE communications, "to the maximum extent

5    possible." *See In re Prohibition Against Disclosing ENE Communications*, 494 F. Supp. 2d at

6    1108; *see also* 28 U.S.C. § 652 (d).

7           Second, in this district, given the broad prohibition on disclosing confidential mediation

8    information, if counsel nevertheless believes the need to disclose such information outweighs the

9    importance of protecting its confidentiality, court approval should be obtained *prior* to any

10   disclosure. *See* ADR L.R. 6-12, Commentary; ADR Decision 09-001 at 6:9-18 (underscoring need

11   to seek prior court approval). With these principles in mind, the Court turns to Nichols' arguments

12   in support of his disclosures.

13          Nichols does not dispute that he knowingly and repeatedly disclosed mediation

14   communications and Defendants' mediation brief in numerous court filings. At oral argument, he

15   conceded that he signed a confidentiality agreement prior to commencement of the court-sponsored

16   mediation, and that nothing prevented him from seeking prior court approval before taking the

17   matter into his own hands and disclosing the mediation information. ADR Local Rule 6-12

18   expressly prohibits disclosure of mediation communications or written mediation statements, with

19   only limited exceptions. *See* ADR L.R. 6-12 (a) and (b); *In re Prohibition Against Disclosing ENE*

20   *Communications*, 494 F. Supp. 2d at 1099 (discussing parallel structure and identical language of

21   the ADR Local Rule pertaining to ENE). According to the Rule, such information is generally not

22   to be used "for any purpose," a phrase which "contains no limitations." *See In re Prohibition*

23   *Against Disclosing ENE Communications*, 494 F. Supp. 2d at 1101.

24          In light of the general mandate of non-disclosure, Nichols makes three arguments: (a) his

25   disclosures were "otherwise required by law" and therefore constitute an exception to

26   confidentiality under ADR Local Rule 6-12(b)(6); (b) it was necessary for him to disclose the

27   mediation statements and mediation brief because he could not have otherwise informed the Court

28   of Plaintiff's positions on summary judgment or responded to Defendants' arguments; and (c) the

**United States District Court**
For the Northern District of California

1   ADR Local Rules are invalid because they are inconsistent with federal statutes and the Federal

2   Rules of Civil Procedure.  The Court addresses each contention in turn.

3           **a.**      **Nichols' disclosures were not required by law.**

4        While conceding that five of the six limited exceptions to confidentiality under ADR Local

5   Rule 6-12 (b) do not apply here, Nichols argues the application of subsection (b)(6) permitting

6   "disclosures as are otherwise required by law."  Nichols posits that the disclosed mediation

7   information formed the basis of  "new independent claims for relief" for unlawful retaliation,

8   breach of fiduciary duty, and ERISA benefits not subject to an allegedly impermissible offset.

9   According to Nichols, if such confidential mediation information had not been disclosed, Plaintiff

10  would have forfeited her "statutorily granted claim" of unlawful retaliation under ERISA, thus

11  resulting in manifest injustice.

12       To support his contention that the disclosures were required by law and thus fall within the

13  ambit of subsection (b)(6), Nichols relies on cases discussing the California Evidence Code or

14  Federal Rule of Evidence 408 for the proposition that settlement communications are admissible,

15  and the "usual rules of confidentiality" are vitiated, where they provide evidence of an actionable

16  wrong that occurred during settlement negotiations.  Such actionable wrongs, according to Nichols,

17  may not be waived by participation in a confidential mediation session.  At oral argument, Nichols

18  clarified that this constituted his sole basis for asserting the disclosures were "required by law"

19  under the ADR Local Rules.

20       Nichols' argument suffers from two baseline fallacies.  First, Nichols erroneously conflates

21  what is actionable and therefore *may* be alleged as a cause of action, with a *legal obligation* to

22  disclose information.  Even if statements made during mediation or settlement discussions may

23  form the basis of a new independent claim for relief[9], it does not follow that a party is *required* to

24  disclose those statements.  Second, the mediation statements Nichols divulged were admittedly not

25  being offered in support of a claim that was part of the complaint before the Court.  Nichols has not

26  cited a single case that stands for the proposition that confidential mediation information may be

27  ───────────────────────

28      [9]  As noted *supra*, any "new independent claims for relief" are based on alleged future harms
that Nichols acknowledged have not occurred.

1   disclosed as evidence of a claim that has not even been alleged.[10]

2           **b.**    **Nichols *could have and should have* sought prior Court approval if he**

3                 **believed disclosure was necessary.**

4           Nichols appears to argue in the alternative that disclosure was nonetheless necessary

5   because there was no other means to apprise the Court of the issues still remaining in the case.  To

6   this end, Nichols presses a distinction between the text of ADR Local Rule 6-12, which does not

7   explicitly refer to prior court approval for disclosures, and its Commentary, which does.  Nichols

8   asserts that therefore, "the local rule [as opposed to its Commentary] neither requires pre-approval

9   by the Court nor provides a means of obtaining it."

10           Again, Nichols misses the point.  ADR Local Rule 6-12 imposes a broad prohibition on

11   disclosure of confidential mediation information.  The text of the Rule is unambiguous: *if none of*

12   *the limited exceptions to confidentiality applies, disclosure is not permitted.*  After underscoring

13   that ordinarily, mediation information is confidential, the Commentary notes that there may be

14   certain circumstances where the need for disclosure outweighs the importance of protecting

15   confidentiality.  The final sentence of the Commentary then reminds parties of what is evident from

16   the Rule itself – since the Rule generally prohibits disclosure, prior court approval would be

17   necessary if none of the exceptions to confidentiality applies and a party seeks disclosure despite

18   that prohibition.

19           Therefore, in order to act contrary to the Rule's broad prohibition on disclosure, Nichols

20

21       [10] In the cases relied on by Nichols, the settlement or mediation information at issue was offered to support a claim that was part of the complaint.  *See, e.g., Athey v. Farmers Ins. Exch.*, 234

22   F.3d 357 (8th Cir. 2000) (settlement negotiations offered as evidence of bad faith claim in complaint); *Uforma/Shelby Bus. Forms, Inc. v. NLRB*, 111 F.3d 1284 (6th Cir. 1997) (underlying

23   settlement negotiations of union grievance offered as evidence of unfair labor practice claim in amended complaint subsequently filed by union); *Molina v. Lexmark Int'l, Inc.*, No. CV 08-04796

24   MMM (FMx), 2008 WL 4447678 (C.D. Cal. Sept. 30, 2008) (settlement negotiations admitted to establish amount in controversy in class action suit seeking vacation pay); *Siler v. Hancock County*

25   *Bd. of Educ.*, 510 F. Supp. 2d 1362 (M.D. Ga.  2007) (mediation statements discussed, without analysis, as part of plaintiff's Title VII claim); *Becker v. Kroll*, 340 F. Supp. 2d 1230 (D. Utah 2004)

26   (compromise negotiations relating to criminal prosecution offered to prove claims alleged in civil rights complaint), *rev'd in part*, 494 F.3d 904 (10th Cir. 2007); *White v. W. Title Ins. Co.*, 40 Cal.3d

27   870 (1985) (settlement offers admitted to prove claim of breach of the covenant of good faith and fair dealing in plaintiff's amended complaint), *superseded by statute on other grounds*, Cal. Ins.

28   Code § 12340.11; *Fletcher v. W. Nat'l Life Ins. Co.*, 10 Cal. App. 3d 376 (1970) (settlement letters offered as evidence of claim of intentional infliction of emotional distress in amended complaint).

United States District Court
For the Northern District of California

1   *could have and should have* sought prior Court approval, but he neglected to do so.[11]   To the extent

2   Nichols argues that the examples in the Commentary to ADR Local Rule 6-12 provide some safe

3   harbor for his conduct, he is incorrect.   The Commentary to ADR Local Rule 6-12 expressly sets

4   forth situations where "the need for disclosure outweighs the importance of protecting the

5   confidentiality of a mediation."   Such examples include threats of death or substantial bodily injury;

6   the use of mediation to commit a felony; the right to effective cross examination in a quasi-criminal

7   proceeding; and the duty to report lawyer misconduct.[12]   These illustrative examples are far

8   removed from the circumstances of this case.   Neither has Nichols established the existence of

9   "truly exigent circumstances" that may have excused the need to seek prior Court approval.   Indeed,

10  at oral argument, Nichols stated that he was "wrong" and acknowledged there was no reason why

11  he could not have pursued this alternative course of action other than his "ignorance" of the ADR

12  Local Rules and his belief that the disclosures were permissible.[13]   With each successive disclosure,

13  culminating in the attachment of Defendants' confidential mediation brief to a filing, Nichols failed

14  to avail himself of multiple opportunities to request prior permission from the Court.

---

[11]   Civil Local Rule 7-11, for example, provides a mechanism for filing a motion for administrative relief, which Nichols could have utilized to seek prior Court approval in order to disclose the confidential information at issue.

[12]   Nichols appears to suggest that the latter example is at play here, in that he asserts he was reporting unlawful conduct on the part of Defendants.  However, the case cited by the Commentary to the ADR Local Rules, *In re Waller*, 573 A.2d 780 (D.C. App. 1990), indicates the situation contemplated in the Commentary is inapposite to the one at bar.  *In re Waller* involved disclosure by the mediator of mediation statements made by counsel in order to report possible lawyer misconduct in violation of the Code of Professional Responsibility.  The mediation statements were discussed in the course of disciplinary proceedings against counsel; the court concluded that in the lawyer's subsequent filed response to the court's order to show cause why he had not misled the mediator during mediation, counsel had made a false representation to the court, which appropriately subjected him to discipline.  573 A.2d at 783-84.  Here, the mediation information was not required as part of an attorney disciplinary proceeding, and Nichols was not reporting misconduct as part of such a proceeding.

[13]   Nichols stated at oral argument that he has been a practicing attorney for an estimated 39 years, including approximately six to seven years in this district.  Like all attorneys admitted to this district, Nichols was required to certify upon seeking admission to this Court that he possessed knowledge of the Local Rules and familiarity with the Court's ADR programs.  *See* Civ.L.R. 11-1(c).  He is thus presumed to have knowledge of this Court's Civil Local Rules and ADR Local Rules.

**United States District Court**
For the Northern District of California

1    In ADR Decision 09-001, Judge Laporte rejected the very same argument by plaintiffs, who

2    had claimed that disclosure was necessary because there was "no otherwise prescribed manner of

3    presenting the evidence." *See* ADR Decision 09-001 at 6:4-5.  Similarly here, the "entire situation

4    could have been avoided" if Nichols had filed a motion "requesting that the trial judge

5    give...permission to include [mediation] materials with a careful explanation avoiding reference to

6    confidential information about the mediation." *See id.* at 6:12-15.  If Nichols had pursued this

7    alternative, Defendants could have opposed the motion, and the Court would have had the

8    opportunity to "weigh[] mediation confidentiality against the asserted need for disclosure to prevent

9    a manifest injustice." *See id.* at 6:17-18.  Thus, Nichols' failure to seek prior Court approval belies

10   his assertion that he had no other means of apprising the Court of the issues purportedly remaining

11   in this case.

12              c.         **The ADR Local Rules are not invalid as a matter of law.**

13   Finally, Nichols argues that the ADR Local Rules are invalid because they are somehow

14   inconsistent with federal statutes and the Federal Rules of Civil Procedure.  This argument is also

15   without merit.  Under 28 U.S.C. § 2071 and Rule 83 of the Federal Rules of Civil Procedure,

16   district courts are expressly empowered to adopt their own local court rules to cover areas not

17   specifically covered by the federal rules.  *See TransAmerica Corp. v. TransAmerica Bancgrowth*

18   *Corp.*, 627 F.2d 963, 965 (9th Cir. 1980) (citations omitted).  Congress explicitly recognized the

19   need for district courts to promulgate local rules covering ADR processes when it passed the ADR

20   Act of 1998.  *See* 28 U.S.C. §§ 651 & 652 (d).  The ADR Act requires that "[u]ntil such time as

21   [federal] rules are adopted ... providing for the confidentiality of alternative dispute resolution

22   processes...each district court shall, by local rule...*provide for the confidentiality of the alternative*

23   *dispute resolution processes and to prohibit disclosure of confidential dispute resolution*

24   *communications*."  28 U.S.C. § 652 (d) (emphasis added).  Accordingly, ADR Local Rule 6-12,

25   consistent with Federal Rule of Evidence 408, furthers the public policy in favor of settlement of

26   disputes by generally requiring the confidentiality of compromise negotiations in order to

27   encourage full and open dialogue between the parties.  *See United States v. Contra Costa County*

28   *Water Dist.*, 678 F.2d 90, 92 (9th Cir. 1982) (discussing public policy underlying Fed.R.Evi. 408).

United States District Court

For the Northern District of California

1   Thus, Nichols' argument here fails.

2          Accordingly, the Court finds that Nichols violated ADR Local Rule 6-12 by disclosing

3   Defendants' mediation brief as well as statements putatively made by the mediator and Defendants

4   during the court-sponsored mediation session – not only once, but in numerous public filings in this

5   case.  The Court does not question that Nichols' disclosures were animated by his genuine, if

6   misguided, belief that he was duty-bound to his client to act as he did.  Nonetheless, that genuine

7   belief does not relieve Nichols of his professional duty to be aware of and refrain from violating

8   this Court's Local Rules, especially one as fundamental to the integrity and administration of the

9   judicial system as the confidentiality of court-sponsored mediation discussions.  Consequently, all

10  such improper references made by Nichols to confidential mediation statements, as well as

11  Defendants' confidential mediation brief, shall be stricken from the record.  The specific portions of

12  the documents to be stricken are set forth in the Conclusion of this order.[14]

13  **D.     Disclosure of Post-Mediation Settlement Negotiations**

14         Although virtually all the disclosures at issue involve a violation of ADR Local Rule 6-12

15  (as discussed *supra*), one paragraph of Docket No. 36 (Plaintiff's Response to Defendants' Request

16  for Further Case Management Conference) sets forth settlement negotiations that did not occur

17  during the court-sponsored mediation but allegedly took place afterwards.  Therefore, the

18  determination of whether disclosure of this information was permissible is not governed by ADR

19  Local Rule 6-12.  *See EEOC v. Albion River Inn, Inc.*, No. C 06-05356 SI, 2007 WL 2560718, at *1

20  (N.D. Cal. Sept. 4, 2007) (ADR Local Rules apply only to court-sponsored ADR processes); *see*

21  *also Folb*, 16 F. Supp. 2d at 1180 (post-mediation settlement communications are protected only by

22  limitations on admissibility under Fed.R.Evi. 408).

23         Rather, the Court relies on its inherent power to strike portions of documents that are

24  improperly part of the record.  *See* Section II.B., *supra.*  Here, the Court emphasizes two points.

25  First, "the need for confidentiality of settlement negotiations is without dispute."  *E.E.O.C. v. ABM*

26  *Indus., Inc.*, No. 1:07-cv-01428 LJO JLT, 2010 WL 582049, at *1 (E.D. Cal. Feb. 12, 2010); *see*

27  _____

28         [14] Docket No. 36 will not be stricken in its entirety since the Court finds that only portions of the document include references to confidential mediation statements or settlement negotiations.

1   *also Contra Costa County Water Dist.*, 678 F.2d at 92 ("[b]y preventing settlement negotiations

2   from being admitted as evidence, full and open disclosure is encouraged, thereby furthering the

3   policy toward settlement"). Second, Docket No. 36 concerns a request for a *case management*

4   conference before the trial judge. Striking inappropriate material from this type of document

5   clearly falls within the Court's inherent power to manage its docket. Moreover, under Federal Rule

6   of Civil Procedure 12(f), courts have granted motions to strike references to settlement negotiations

7   even at the pleadings stage of a case, on the basis that the contents of settlement discussions would

8   otherwise be inadmissible under Federal Rule of Evidence 408 and are therefore immaterial and

9   potentially prejudicial. *See, e.g.*, *Stewart v. Wachowski*, No. CV 03-2873 MMM (VBKx), 2004 WL

10  5618386, at *2 (C.D. Cal. Sept. 28, 2004) (collecting cases striking allegations from complaints

11  based on Fed.R.Evi. 408, even though it is a rule of evidence). Thus, based on the same reasoning,

12  under its inherent powers this Court may strike a paragraph from a case management document that

13  discloses confidential settlement negotiations, if they would be inadmissible under the Federal

14  Rules of Evidence. Nichols' reference to settlement negotiations in Docket No. 36 would be

15  inadmissible under Federal Rules of Evidence 401, 403, and 408.

16          Nichols has failed to present the Court with any legitimate basis for his disclosure of

17  confidential settlement negotiations. At oral argument, Nichols clarified that his sole justification

18  for offering the post-mediation settlement negotiations was to demonstrate the existence of "new"

19  claims for relief based on the alleged retaliation and impermissible offset. However, any new

20  claims, assuming they are even actionable, are not even part of the complaint. As such, the

21  settlement negotiations referenced in Docket No. 36 are completely irrelevant to this case under

22  Federal Rule of Evidence 401. Moreover, to the extent the disclosure conveys ███████████

23  ███████████████████████████████████████████████████████████████████, the Court

24  finds that Nichols' disclosure is barred by Federal Rule of Evidence 408. Such information

25  arguably suggests Defendants' liability for Plaintiff's LTD benefits claim, the single claim at issue

26  in her complaint, and thus falls within the Rule's proscription that settlement negotiations cannot be

27  offered for that purpose. *See* Fed.R.Evi. 408 (settlement negotiations are not admissible to prove

28  liability for or invalidity of a claim or its amount); *Millenkamp v. Davisco Foods Int'l, Inc.*, 562

United States District Court
For the Northern District of California

1   F.3d 971, 980 (9th Cir. 2009).  Finally, even if this information were of limited relevance for some

2   admissible purpose, the danger of unfair prejudice substantially outweighs any probative value.  *See*

3   Fed.R.Evi. 403; *Millenkamp*, 562 F.3d at 980 (finding Fed.R.Evi. 403 required exclusion of letter

4   responding to settlement demand, even if such letter was of limited relevance).  Accordingly, the

5   reference to settlement negotiations in Docket No. 36 should be stricken.

6   **E.**    <u>**Sanctions Under 28 U.S.C. § 1927**</u>

7          Defendants argue that two bases exist for the imposition of sanctions against Nichols:[15] 28

8   U.S.C. § 1927 and ADR Local Rule 2-4 (c).  In this opinion, the Court addresses the issue of

9   sanctions under 28 U.S.C. § 1927 and reserves its full discussion of sanctions under the ADR Local

10  Rules for its separate opinion on Defendants' ADR Complaint.  The Court declines to award

11  sanctions under 28 U.S.C. § 1927 because **\*\*\*CONTENTS FILED UNDER SEAL TO**

12  **PROTECT ADR CONFIDENTIALITY\*\*\***



17                                    **III. <u>CONCLUSION</u>**

18         Based on the foregoing, Defendants' Amended Motion to Strike is GRANTED in part and

19  DENIED in part, as follows.  The Court GRANTS Defendants' request to strike disclosures made

20  by Nichols of confidential mediation and settlement information, including Defendants' mediation

21  brief.  However, the Court finds that only portions of Docket No. 36 include improper references to

22  confidential mediation and settlement communications, and that with respect to some of the other

23  documents at issue, Defendants have over-designated lines which do not disclose confidential

24  mediation communications.  Therefore, the Court DENIES Defendants' request to strike Docket

25  No. 36 in its entirety as well as the over-designated lines in other documents.  The lines that shall be

---

27  [15]  In their opening brief, Defendants sought sanctions against Plaintiff and Nichols.
28  However, in their subsequent reply and surreply, as well as their ADR complaint, Defendants
    narrowed their sanctions request to seek only those against Nichols.

United States District Court

For the Northern District of California

1    stricken per document are indicated below.  Defendants' request for sanctions under 28 U.S.C. §

2    1927 is DENIED.

3        **Accordingly, the Court instructs the Clerk to remove from ECF the following**

4    **documents:**

5        Docket No. **36** (filed on 9/22/2009);

6        Docket No. **46** (filed on 1/18/2010);

7        Docket No. **47** (filed on 1/18/2010);

8        Docket No. **48** (filed on 1/18/2010);

9        Docket No. **49** (filed on 1/18/2010);

10       Docket No. **50** (filed on1/18/2010);

11       Docket No. **72** (filed on 1/18/2010);

12       Docket No.  **85** (filed on 3/29/2010);

13       Docket No. **86** (filed on 3/29/2010);

14       Docket No. **94** (filed on 5/3/2010);

15       Docket No. **95** (filed on 5/3/2010); and

16       **Exhibit 75** to Docket No. **87** (filed on 3/29/2010).

17       **Within 5 (five) court days after receiving notice that the above documents have been**

18   **removed from ECF by the Clerk, Plaintiff shall re-file redacted versions of the documents on**

19   **ECF, as indicated immediately below.**  (The page numbers referenced below are the page

20   numbers noted by Plaintiff in the footer of each document, except as to Docket No. 94, wherein

21   Plaintiff did not include page numbers.  For Docket No. 94, the caption page is page 1.)

22       Docket No. **36** shall be redacted of the following lines:

23           1:3-10; 1:20-22; 3:7; 3:13; 3:19-21; 4:1-9; 5:1-9; 6:15-16; 9:4-6; 11:10-23; 18:13-

24           14; 23:1-2.

25       Docket No. **46** shall be redacted of the following lines:

26           2:9-12; 2:19-20; 5:9-11; 8:1-5; 14:6-9.

27       Docket No. **47** shall be redacted of the following lines:

28           8:14-16; 10:7-10.

Docket No. **48** shall be redacted of the following lines:

    12:5-8.

Docket No. **49** shall be redacted of the following lines:

    1:6-8; 6:14-17.

Docket No. **50** shall be redacted of the following lines:

    5:12-13; 5:25-28; 11-21-23; 14:14-16; 15:9-10; 16:3-8; 16:22-25.

Docket No. **72** shall be redacted of the following lines:

    From "In late July 2009..." through "approximately $1070 per month" (after

    paragraph 7).

Docket No. **85** shall be redacted of the following lines:

    5:23-24; 6:3-26; 7:19-21; 16:16-20.

Docket No. **86** shall be redacted of the following lines:

    5:2-25; 6:18-20.

Docket No. **94** shall be redacted of the following lines:

    2:14-19; 5:17-18; 6:10-11.

Docket No. **95** shall be redacted of the following lines:

    7:15-17; 9:2-3; 12:10.

**Exhibit 75** to Docket No. **87** shall be redacted in its entirety.

Pursuant to Federal Rule of Civil Procedure 72, any objections to this Order must be filed within 14 (fourteen) days after service of this Order. The implementation of this Order shall be STAYED pending the applicable period for filing objections. If no objections are filed by **October 29, 2010**, the Clerk is instructed to immediately remove the documents from ECF as indicated above. If objections to this Order are timely filed by **October 29, 2010**, this Order shall remain stayed pending final determination of any objections.

IT IS SO ORDERED.

Dated: October 15, 2010

_____

DONNA M. RYU
United States Magistrate Judge