UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SUSAN RENE JONES,<br><br>            Plaintiff,<br><br>    v.<br><br>LIFE INSURANCE COMPANY OF<br>NORTH AMERICA, et al.,<br><br>            Defendants. | Case No.  08-cv-03971-RMW<br><br>**ORDER DENYING PLAINTIFF'S<br>MOTION FOR SUMMARY JUDGMENT<br>AND GRANTING DEFENDANTS'<br>MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 328, 337, 338 |

This is an ERISA case in which plaintiff Susan Rene Jones challenges the deduction of the amount of Social Security Disability Income ("SSDI") benefits that she receives for her dependents from the long term disability benefits ("LTD") that she receives from an employee benefits plan. Plaintiff also seeks retroactive reinstatement of her LTD benefits without the offset and penalties for defendants' failure to produce plan documents. The parties agreed that this case would be resolved by cross-motions for summary judgment filed on December 18, 2015. *See* Dkt. Nos. 292, 328, 337, 338.[1] Both parties filed oppositions and replies. Dkt. Nos. 343, 344, 345, 346. A hearing was held on January 22, 2016. Having considered the submissions of the parties, the

---

[1] Plaintiff filed a first motion for summary judgment on December 18, 2015 and a second motion for summary judgment on December 19, 2015. Dkt. Nos. 328 and 338. Plaintiff's motions appear to be the same except for corrections to the table of contents and authorities. This order will refer to the motion filed by plaintiff at Docket Number 338.

United States District Court
Northern District of California

1  court grants summary judgment for defendants on all issues and denies plaintiff's motion.

2  **I.      BACKGROUND**

3          Plaintiff worked for Merck & Co., Inc., which is now known as Merck Sharp & Dohme

4  Corp. ("Merck"). As a Merck employee, plaintiff participated in the Merck & Co., Inc. Long Term

5  Disability Plan for Nonunion Employees, later known as the MSD Medical, Dental and Long

6  Term Disability Plan for Nonunion Employees, and now known as the Merck Medical, Dental,

7  Life Insurance and Long Term Disability Plan (the "Plan").[2] Merck is the Plan Administrator.

8  Metropolitan Life Insurance Co. ("MetLife") was the Claims Administrator for the Plan through

9  2010. Life Insurance Company of North America ("LINA") became the Claims Administrator for

10  the Plan as of January 1, 2011.

11          Plaintiff stopped working in June 2001 and made a claim to the Plan for LTD benefits

12  shortly thereafter. Dkt. No. 278-8 at 48-60, AR 1968-82. MetLife approved her claim effective

13  December 19, 2001. Dkt. No. 278-18 at 38-40, AR 3251-53. Plaintiff received LTD benefits

14  through April 12, 2007, when MetLife terminated her benefits. Dkt. No. 53-35 at 22-24, AR 1075-

15  77. Plaintiff appealed, and MetLife upheld its decision to terminate her benefits on March 11,

16  2008. Dkt. No. 53-7 at 26-29, AR 211-14. On August 20, 2008, plaintiff filed this action under the

17  Employee Retirement Income Security Act of 1974, seeking reinstatement of her LTD benefits

18  under the Plan. Dkt. No. 1.

19          On September 4, 2009, defendants' counsel notified plaintiff that her LTD benefits under

20  the plan would be reinstated, retroactive to the date of termination. Dkt. No. 278-19 at 27-28, AR

21  3405-06. Counsel's letter indicated that MetLife might offset plaintiff's reinstated LTD benefits

22  by the amount of SSDI benefits that plaintiff received for her children.[3] *Id.* at 27, AR 3405.

23  

24  [2] The Plan was renamed the MSD Medical, Dental and Long Term Disability Plan for Nonunion
    Employees effective January 1, 2011. Dkt. No. 265-3 at 128-129. The Plan was renamed again,

25  effective January 1, 2014, as the Merck Medical, Dental, Life Insurance and Long Term Disability
    Plan. Dkt. No. 278-23 at 240-242.

26  [3] While defendants claim that there is "no evidence" that plaintiff was ever "informed that she
    would have to refund thousands of dollars of LTD benefits," Dkt. No. 344 at 8 n. 13, defense

27  counsel's September 4, 2009 letter to plaintiff indicates that "there may have been an overpayment
    of benefits" which plaintiff "would be obligated to reimburse to the Plan," Dkt. No. 278-19 at 27,

28  

2

Plaintiff has two children, born in 2003 and 2006. Section 3.5 of the Plan provides that:

> (a) Any benefit payable under the Plan shall be reduced by:
>
>> (i) Social Security Benefits, effective at the time the Participant becomes entitled to benefits

Dkt. No. 278-17 at 18, AR 3137.[4] "Social Security Benefits" are defined under the Plan as "the primary and family insurance benefit under the United States Social Security Act . . . to which a Participant is or would be entitled at the time of Total Disability." Dkt. No. 278-17 at 15, AR 3134. Plaintiff began receiving "primary" SSDI benefits in 2002; those benefits have been offset from her LTD benefits since that time. *See* Dkt. No. 278-18 at 41-42, AR 3254-55. Plaintiff first applied for "family" social security benefits for her children in August 2009, and the Social Security Administration awarded such benefits effective retroactively to August 2008. Dkt. No. 278-19 at 21-26, AR 3399-404.

In February 2010, MetLife informed plaintiff that her LTD benefits were being retroactively reinstated from the date of termination in April 2007, but that plaintiff's LTD benefits would be offset by the amount of plaintiff's dependent SSDI benefits as of August 1, 2008. Dkt. No. 278-19 at 29-34, AR 3407-12.

On July 8, 2010, this court granted summary judgment for defendants, finding plaintiff's claims moot after the reinstatement of her LTD benefits. Dkt. No. 118. Plaintiff appealed, and the Ninth Circuit vacated the dismissal of plaintiff's "claim concerning the amount of long-term disability benefits, including the question whether an offset should be applied and any other questions related to the amount of such benefits" on October 28, 2011. Dkt. Nos. 127, 175. The Ninth Circuit remanded with instructions to this court to remand the claim to the administrator. Dkt. No. 175. At the time of remand to the administrator, plaintiff's first two administrative

---

AR 3405. Defendants did not, however, subsequently seek reimbursement from plaintiff. Therefore, the court has no occasion to consider whether defendants could apply the offset for the period before plaintiff actually began receiving dependent SSDI benefits from the SSA.

[4] The court cites to the 1991 Restatement of the Merck & Co., Inc. Long Term Disability Plan for Nonunion Employees. See Dkt. No. 265-5 at 229-266. Although the plan has been amended and restated more than once since then, the relevant language has not changed and the parties agree that the quoted language controls. *See* Dkt. Nos. 337 at 5, 338 at 3.

3

United States District Court
Northern District of California

appeals regarding the dependent SSDI offset had been denied. *See* Dkt. Nos. 278-19 at 37-41, AR 3415-19; 278-16 at 41-43, AR 3010-12. Following remand, LINA issued its June 20, 2012 final decision upholding the offset. *See* Dkt. No. 278-16 at 38-40, AR 3007-09.

Plaintiff now seeks a judicial determination that the dependent SSDI offset was, and continues to be, improper under the Plan. Even if the court upholds the offset, plaintiff argues that she is entitled to benefits from the time the offset was first applied through the decision of this court under *Pannebecker*. Plaintiff also requests statutory penalties from defendants for failure to produce documents to plaintiff as required by the ERISA statute and regulations.

## II.    STANDARD OF REVIEW

In the ERISA context, "a motion for summary judgment is merely the conduit to bring the legal question before the district court and the usual tests of summary judgment, such as whether a genuine dispute of material fact exists, do not apply." *Harlick v. Blue Shield of California*, 686 F.3d 699, 706 (9th Cir. 2012) (quoting *Nolan v. Heald Coll.*, 551 F.3d 1148, 1154 (9th Cir. 2009)). When a court reviews an ERISA plan administrator's denial of benefits, the default standard of review is de novo. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). If, however, the plan confers discretionary authority to determine eligibility for benefits or construe the terms of the plan, "then the standard of review shifts to abuse of discretion." *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006) (citing *Firestone*, 489 U.S. at 115). "If there are procedural irregularities or if an administrator operates under a conflict of interest," the court considers the irregularities or conflict "as a factor in determining whether there has been an abuse of discretion." *Pac. Shores Hosp. v. United Behavioral Health*, 764 F.3d 1030, 1040 (9th Cir. 2014) (citing *Abatie*, 458 F.3d at 965, 972). "The essential first step of the analysis, then, is to examine whether the terms of the ERISA plan unambiguously grant discretion to the administrator." *Abatie*, 458 F.3d at 963. Defendants bear the burden of proving the Plan's grant of discretionary authority. *See Prichard v. Metro. Life Ins. Co.*, 783 F.3d 1166, 1169 (9th Cir. 2015).

### A.    Grant of Discretion to Claims Administrators

In this case, the Plan terms unambiguously grant discretion to the Claims Administrators—

first MetLife and then LINA. Section 8.2 of the Plan in effect through 2010 states that the "Claims Administrator shall make all determinations as to the right of any person to a benefit under the Plan and shall have the discretion to construe the terms of the Plan as necessary in order to make such determination." Dkt. No. 278-17 at 35, AR 3154. The 2010 Summary Plan Description ("SPD") identifies MetLife as the "Claims Administrator for the LTD Plan" and indicates that Merck "has delegated all of its authority . . . with respect to adjudicating claims and appeals for benefits . . . to the Claims Administrator."[5] Dkt. No. 265-4 at 79. This grant of discretion is further reflected in the Administrative Services Contract ("ASC") between Merck and MetLife: "Customer and MetLife acknowledge that MetLife assumes sole responsibility and discretionary authority for approving or denying Plan Benefits in whole or part" and "for providing the full and fair review of determinations concerning eligibility for Plan Benefits and the interpretation of Plan terms in connection with the appeal of Claims denied in whole or in part." Dkt. No. 53-2 at 11, AR 41. Therefore, defendants have satisfied their burden to show that the Plan grants discretionary authority to MetLife through 2010.

The Plan was amended, restated, and renamed as of January 1, 2011. *See* Dkt. No. 265-3 at 128. Section 8.4 of the 2011 Plan gives Merck, as Plan Administrator, "full power, authority and discretion to enforce, construe, interpret and administer" the Plan. Dkt. No. 265-3 at 159. Merck also has the authority, however, to delegate the "duties, powers, and responsibilities" of administering claims to a Claim Administrator. *Id.* at 160, Section 9.2; *see also* Dkt. No. 265-3 at 158, Section 8.1 (Merck "shall act as the Plan Administrator, but may delegate all or a portion of

---

[5] The 2010 SPD, the 2011 Plan, and an October 2011 version of the ASC between Merck and LINA are not labeled as part of the administrative record in this case. These documents were included in defendants' March 10, 2015 filing of "all of the Plan documents, amendments and restatements thereto, and summary plan descriptions, for the various incarnations of the long term disability plan ("Plan") and regarding long term disability benefits applicable to plaintiff since 1991." Dkt. No. 265. "In the ERISA context, the 'administrative record' consists of 'the papers the insurer had when it denied the claim.'" *Montour v. Hartford Life & Acc. Ins. Co.*, 588 F.3d 623, 632 (9th Cir. 2009) (quoting *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1086 (9th Cir. 1999)). Plaintiff has not challenged the authenticity of these documents, nor has plaintiff suggested that the Claims Administrators did not have access to the applicable Plan documents, SPDs, or ASCs when they applied and upheld the offset. Therefore, the court considers these documents in determining whether the Plan confers discretionary authority.

its plan administration duties and responsibilities to a person, entity, outside administrator or committee") and 160, Section 9.3 (Claims Administrator "shall have the duty to receive and review claims for benefits" and "to provide full and fair review in accordance with the applicable provisions of ERISA to any individual whose claim for benefits has been denied in whole or in part."). The terms of the 2011 Plan, therefore, grant discretion to a Claims Administrator, should Merck choose to designate one. The 2011 SPD identifies CIGNA, LINA's parent company, as "the Claims Administrator for the LTD Plan." Dkt. No. 278-20 at 25, AR 3561; *see also* Dkt. No. 278-20 at 22, AR 3558. The 2011 SPD explains LINA's discretion:

> The Plan Administrator has delegated all of its authority . . . with respect to adjudicating claims and appeals for benefits (and handling any resulting lawsuits) under the LTD Plan to the Claims Administrator. That means that the Claim Administrator has the sole authority to determine such matters under the Plan and the Plan Administrator will not and cannot substitute its judgment for that of the Claims Administrator on such matters. It also means the Claims Administrator has all of the discretion described above to the extent it relates to the Claims Administrator's duties under the LTD Plan, for example regarding eligibility for benefits . . .

Dkt. No. 278-20 at 26, AR 3562. The 2011 SPD is incorporated by reference in the 2011 Plan document. Dkt. No. 265-3 at 182, Schedule 10.10.

Plaintiff argues that discretion cannot be granted in an SPD, citing *CIGNA Corp. v. Amara*. *See* Dkt. No. 343 at 4. In *Amara*, the Supreme Court stated that SPDs, "as important as they are, provide communication with beneficiaries *about* the plan, but ... [the SPD] statements do not themselves constitute the *terms* of the plan." 563 U.S. 421, 438 (2011) (emphasis in original). After *Amara*, however, the Ninth Circuit has indicated that discretion can be granted in an SPD if the SPD is a Plan document. *See Prichard*, 783 F.3d at 1170-71 (finding SPD's grant of discretion insufficient because SPD is "[c]onspicuously absent" from documents listed in plan's integration clause). Because the 2011 SPD is incorporated in the 2011 Plan document, the court is satisfied that the 2011 SPD's grant of discretion to LINA constitutes a term of the Plan. *Cf. Prichard*, 783 F.3d at 1171; *see also Ingorvaia v. Reliastar Life Ins. Co.*, 944 F. Supp. 2d 964, 966 (S.D. Cal. 2013) ("Defendants must show the SPD's grant of discretion is a term of the plan"); *Langlois v.*

6

*Metro. Life Ins. Co.*, 833 F. Supp. 2d 1182, 1186 (N.D. Cal. 2011) (finding SPD terms sufficient to establish grant of discretion where the company intended "terms of the Plan described in [the SPD], including those relating to coverage and benefits," to be "legally enforceable"). Therefore, defendants have established that the 2011 Plan granted discretion to LINA as of January 1, 2011, when the SPD became effective. *See* Dkt. No. 278-20 at 6, AR 3542.

### B.    Effect of LINA Administrative Services Contracts

In spite of the 2011 Plan's grant of discretion, plaintiff argues that Merck did not have authority to grant discretion to LINA. Plaintiff cites a March 2011 version of the ASC between Merck and LINA, as well a June 12, 2012 email from a LINA Appeals Team Leader suggesting that LINA did not have authority to resolve claim appeals. *See* Dkt. No. 338 at 14-15. The court is not convinced by this evidence.

There are two partially executed versions of the ASC between Merck and LINA in the administrative record. The first, dated March 7, 2011, states that LINA "will provide the initial and ongoing screening of claims to determine whether benefits are payable in accordance with the terms of the Plan," but that Merck, the Employer, "shall be the fiduciary designated under ERISA regulations for the determination of appealed claims and that in this process Administrator shall serve solely as Employer's agent to coordinate and facilitate the appeals process." Dkt. No. 278-17 at 1, AR 3120. The second version ASC, dated June 12, 2012, states that LINA "assumes sole responsibility and discretionary authority for approving or denying claims and appeals under the Plan . . ." Dkt. No. 278-16 at 126, AR 3095. Merck also produced a third, fully executed version of the ASC, dated October 20, 2011, that contains the same grant of discretion to LINA that appears in the June 12, 2012 version. *See* Dkt. No. 334 at 10, 15, MERCK 678, 683.[6]

On June 12, 2012, a CIGNA (i.e., LINA) Appeals Team Leader emailed Merck, indicating

---

[6] Plaintiff claims that the October 2011 version of the ASC "renumbered the pages, left out redacted page 4 at least, and appears to have been redrafted." Dkt. No. 338 at 22. The pages of the document submitted by plaintiff are in numerical order, and there are no gaps in the page numbering. The redactions in the document do not appear to relate to LINA's "discretionary authority for approving or denying claims and appeals under the Plan."

7

United States District Court
Northern District of California

1   that LINA had completed its review of plaintiff's appeal and determined that the dependent SSDI

2   offset was appropriate, but that under the services contract between the parties, Merck had to make

3   the final decision. Dkt. No. 278-17 at 6, AR 3125. The Appeals Team Leader followed up with a

4   correction email on June 13, 2012, stating that LINA assumed full fiduciary responsibility for

5   appeals under the "agreement in place." Dkt. No. 278-17 at 5, AR 3124. On June 20, 2012, an

6   Appeals Claim Manager for LINA issued a final decision confirming the application of the offset

7   to plaintiff's LTD benefits under the Plan. Dkt. No. 278-16 at 38-40, AR 3007-09.

8        The June 2012 email thread and the different version of the ASC undoubtedly raise some

9   question as to when and whether Merck delegated authority to LINA in an ASC; defendants

10  acknowledge that the March 2011 version of the ASC "appears to have caused some confusion for

11  the claim staff in communicating with Merck about the remand." Dkt. No. 344 at 11. However,

12  even if Merck did not explicitly grant discretion to LINA in an ASC, Merck grants such to

13  discretion to LINA in the Plan itself. The court also notes that, in accordance with the terms of the

14  Plan, LINA acted as Claims Administrator when it denied plaintiff's appeal in July 2011. *See* Dkt.

15  No. 278-16 at 41, AR 3010 ("We have completed our review and must uphold our prior decision

16  [] to withhold the dependent offset"). As the Plan terms are unambiguous, the court is not

17  persuaded by plaintiff's argument that Merck lacked authority to delegate its discretion to LINA.[7]

18       Plaintiff also argues that even if Merck had the authority to grant LINA discretion, Merck

19  discriminated against plaintiff by granting discretion to LINA "because it made her subject to a

20  deferential standard rather than the de novo standard applicable to other participants." Dkt. No.

21  338 at 14. None of the evidence cited by plaintiff suggests that Merck's grant of discretion to

22  LINA was made for purposes of plaintiff's appeal only or that federal appeals by other Plan

23  participants would be subject to de novo review.

24

25

---

26  [7] Plaintiff appears to concede that LINA does have discretion under the ASCs in the penalties
    section of her motion for summary judgment. *See* Dkt. No. 338 at 21, n.21 ("Administrative

27  Service Agreements" delegate "final responsibility and discretion on all claims administration
    matters" to "MetLife and LINA").

28

08-cv-03971-RMW
ORDER RE MOTIONS FOR SUMMARY JUDGMENT
FC

United States District Court
Northern District of California

C.     **Other Factors Relevant to Standard of Review**

Under the abuse of discretion standard, a "plan administrator's interpretation of the plan 'will not be disturbed if reasonable.'" *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 675 (9th Cir. 2011) (quoting *Conkright v. Frommert*, 559 U.S. 506, 506 (2010)). The court's review for abuse of discretion, however, must be "informed by the nature, extent, and effect on the decision-making process of any conflict of interest that may appear in the record." *Abatie*, 458 F.3d at 967. "This standard applies to the kind of inherent conflict that exists when a plan administrator both administers the plan and funds it, as well as to other forms of conflict." *Id.* "[I]f an administrator engages in 'wholesale and flagrant violations of the procedural requirements of ERISA,' its decision is subject to de novo review." *Pac. Shores*, 764 F.3d at 1040 (quoting *Abatie*, 458 F.3d at 971). However, "most procedural errors are not sufficiently severe to transform the abuse-of-discretion standard into a de novo standard," and less than flagrant procedural violations are merely weighed as a factor in abuse of discretion analysis. *Id.* (quoting *Anderson v. Suburban Teamsters of N. Ill. Pension Fund Bd. of Trustees,* 588 F.3d 641, 647 (9th Cir.2009)).

Plaintiff argues that procedural irregularities of this case reflect a conflict of interest, and therefore heightened scrutiny of the Claims Administrators' decision is warranted. Specifically, plaintiff points to 1) defendants' failure to identify and explain the offset provision at the time it was applied, 2) defendants' inconsistent reasoning in the successive appeals determinations, 3) the lack of an adequate administrative record, and 4) the intrusion of defense counsel into the benefits determination.[8] Considering all the circumstances, the court finds no conflict of interest that calls for a higher standard of review.

First, plaintiff argues that the specific plan provision should have been cited and explained

---

[8] Plaintiff also argues in passing that MetLife and LINA were structurally conflicted because of the "substantial fees" from Merck. Dkt. No. 338 at 20. Plaintiff states that she "requested the amount of total administrative fees as to disability and other insurance coverage premiums in discovery and defendants refused to provide it." *Id.* There is no evidence before this court suggesting a structural conflict of interest based on fee arrangements. Plaintiff had ample opportunity to seek discovery. While plaintiff moved to compel production of other documents relating to alleged conflict of interest, plaintiff did not move to compel discovery relating to MetLife or LINA's fee arrangements. Moreover, the abuse of discretion standard is generally applied to decisions by claims administrators who do not pay claims themselves.

United States District Court
Northern District of California

in defense counsel's September 4, 2009 letter and MetLife's February 2010 letters. *See* 29 C.F.R.

§ 2560.503-1(g)(1)(i)-(ii) ("plan administrator shall provide . . . notification" setting forth

"specific reason or reasons for the adverse determination" and "reference to the specific plan

provisions on which the determination is based"). Defense counsel's September 4, 2009 letter was

not a determination of benefits, and so ERISA regulations do not apply. MetLife did not include

the section number for the Plan's offset provision in the February 2010 benefits determination

letters, but MetLife did reference the offset provision and explain its application:

> As you know, pursuant to the terms of the Plan under which your client is receiving benefits, the LTD benefit is offset by certain other income Ms. Jones receives. These include Social Security ("SSDI") benefits (both primary & family). Therefore, your client's benefits are offset by $ 1,863.00 per month with respect to Ms. Jones' primary SSDI benefits. We understand that Ms. Jones began receiving dependent SSDI benefits effective August 1, 2008. Therefore, in addition, your client's SSDI benefits are offset by $964.00 per month effective August 1, 2008.

Dkt. No. 278-19 at 29, AR 3407.

Second, plaintiff argues that the Claims Administrators used inconsistent reasoning in the

denials of plaintiff's administrative appeals. All three letters, however, inform plaintiff that

dependent SSDI benefits are offset from LTD benefits when a claimant receives the dependent

SSDI benefits. *See* Dkt. Nos. 278-19 at 40, AR 3418 ("the Plan offsets Social Security disability

benefits, both SSDI and DDSD, when a claimant begins to receive such benefits, just as it did in

Ms. Jones' case"); 278-16 at 42, AR 3011 ("the plan offsets both SSDI and dependent SSDI

benefits when the claimant becomes eligible for such benefits"); 278-16 at 40, AR 3009 ("MetLife

appropriately applied the Social Security Dependent Benefit as an offset against Ms. Jones'

benefits at the time she became entitled to receive both the Dependent Benefit and the ongoing

disability benefit under the Plan.").

Plaintiff objects to defendants' citation to SPD language in the letters, specifically

language stating that LTD benefits are offset by "Social Security benefits (both primary and

family disability or retirement benefits) that you and your eligible dependents are entitled to

08-cv-03971-RMW
ORDER RE MOTIONS FOR SUMMARY JUDGMENT
FC

1   receive *when you become eligible for LTD benefits*."[9] Dkt. No. 278-19 at 39, AR 3417; 278-16 at

2   41, AR 3010; Dkt. No. 278-16 at 40, AR 3009 (emphasis added). But all three letters explain that

3   the offset is applied "regardless of whether a dependent was born before or after the claimant

4   became disabled." Dkt. No. 278-19 at 40, AR 3418; *see also* Dkt. No. 278-16 at 42, AR 3011

5   ("Regardless of whether dependent was born before or after the claimant was declared disabled,

6   the plan offsets both SSDI and dependent SSDI benefits when the claimant becomes eligible for

7   such benefits."); Dkt. No. 278-16 at 40, AR 3009 ("neither the Plan nor the SPD specify that the

8   Social Security Offset is limited to just that initial qualification period").

9       Plaintiff also argues that only the July 11, 2011 letter from LINA mentions that the

10   "benefit issued to the dependents was on Ms. Jones' behalf and issued under her social security

11   number because of the disability which she qualifies for both under the Social Security

12   Administration and this plan." Dkt. No. 278-16 at 42, AR 3011. However, this explanation is not

13   inconsistent with the reasoning previously relied on by MetLife. The explanation was provided in

14   response to a new argument from plaintiff. S*ee* Dkt. No. 278-18 at 66, AR 3279 ("Under SSA

15   regulations, the children's SSDI benefits belong to her children, not to her."). Rather than

16   demonstrating any procedural irregularity, the July 11, 2011 letter reflects the "meaningful

17   dialogue" between an ERISA plan administrator and a beneficiary that is intended under the

18   regulations. *Booton v. Lockheed Med. Ben. Plan*, 110 F.3d 1461, 1463 (9th Cir. 1997).

19       Third, plaintiff suggests that the administrative record is procedurally irregular because it

20   lacks sufficient "narratives, notes, substantive description, or analysis" regarding the dependent

21   SSDI offset. Dkt. No. 338 at 20. It is not clear that any particular narrative, notes, or analysis is

22   required to apply an offset for dependent SSDI benefits when a primary SSDI offset is already in

23   place.

24       Fourth, plaintiff contends that defense counsel first asserted the offset as "a surprise

25   litigation tactic made without consulting the Plan document" and that defense counsel

26   _____

27   [9] The parties agree the language of the Plan controls, *see* Dkt. No. 338 at 3-4; 337 at 5, and there is
    no assertion by either party that any SPDs were incorporated as Plan terms before 2011.

28                                                 11

United States District Court
Northern District of California

communicated with in-house legal staff at LINA, who in turn participated in LINA's decision to uphold the offset. Dkt. No. 338 at 13. The court has reviewed the correspondence cited by plaintiff[10] and is not convinced that there is evidence of a conflict of interest. Defense counsel may have been the first to alert plaintiff as to the possibility of dependent SSDI offset, but defense counsel's September 4, 2009 letter states that MetLife, as Claims Administrator, "is in the process of making an administrative determination regarding the amount of outstanding LTD benefits." The correspondence between defense counsel and LINA's legal department does not reveal that defense counsel had influence over any benefits determination. The emails between LINA's legal department and claims department suggest only that a LINA attorney "worked . . . on the wording," rather than the substance of the June 20, 2012 denial letter to plaintiff. Dkt. No. 330 at 3. Furthermore, defendants submit testimony from the Appeals Specialist at LINA stating that the June, 12, 2012 decision was made by the Appeals Specialist—"not by any attorney." Dkt. No. 344 at 2.

## III.  CLAIM FOR REINSTATEMENT OF LTD BENEFITS WITHOUT OFFSET

The court finds no abuse of discretion by defendants in applying the dependent SSDI offset. Despite plaintiff's arguments to the contrary, defendants are not barred from applying the offset by the statute of limitations, the doctrine of waiver, or the California Insurance Code. Therefore, plaintiff's motion for summary judgment that the dependent SSDI offset should not apply is denied, and defendants' motion for summary judgment is granted.

### A.  Application of the Offset

Under Section 3.5 of the Plan, "any benefit payable under the Plan" is reduced by "Social Security Benefits, effective at the time the Participant becomes entitled to benefits." Dkt. No. 278-17 at 18, AR 3137. The Plan defines "Social Security Benefits" as including both "primary" and "family" benefits. Dkt. No. 278-17 at 15, AR 3134. Defendants interpreted the Plan to reduce

---

[10] In an ERISA case, the court may consider evidence outside the administrative record "to determine the precise contours of the abuse of discretion standard," but must weigh such evidence under the "traditional rules of summary judgment." *Nolan*, 551 F.3d at 1154 (holding that district court must consider evidence of conflict of interest in light most favorable to nonmoving party).

United States District Court
Northern District of California

1  plaintiff's LTD benefits by the amount her dependent SSDI benefits, effective as of the date

2  plaintiff began receiving such benefits from the SSA—August 1, 2007.

3  Plaintiff first argues that the Plan only allows for the offset of Social Security benefits that

4  plaintiff was already receiving when she became entitled to LTD benefits under the Plan.

5  According to plaintiff, because her children were not yet born when she was first awarded LTD

6  benefits in 2001, dependent SSDI benefits that she receives can never be offset under the Plan.

7  Plaintiff's interpretation is nonsensical. Under plaintiff's interpretation, a claimant who had

8  children before becoming disabled is entitled to less in LTD benefits than a claimant who has

9  children after becoming disabled.

10  Under plaintiff's interpretation, "entitled to benefits" would not modify "Social Security

11  benefits," the term immediately preceding it, but rather "[a]ny benefit payable under the Plan."

12  Plaintiff argues that "entitled to benefits under the Plan" is a defined term in section 3.1 of the

13  Plan, but the words "under the Plan" are conspicuously absent from the phrase "entitled to

14  benefits" as used in Section 3.5. Furthermore, "entitled to benefits" is not capitalized as are the

15  defined terms used in the Plan.

16  Plaintiff also argues that SPD language "illustrates defendants' longstanding interpretation

17  of the plan as offsetting only social security benefits effective at the time the participant becomes

18  entitled to <u>LTD</u> benefits." Dkt. No. 343 at 6 (citing SPD language: "Social Security benefits . . .

19  that you and your eligible dependents are entitled to receive <u>when</u> you <u>become</u> eligible for <u>LTD</u>

20  <u>benefits</u>.") Plaintiff offers no evidence other than the SPD language itself to show that defendants

21  ever limited the offset in this way, and the Claims Administrators consistently explained to

22  plaintiff that this language was not meant to limit the offset of dependent SSDI benefits to those

23  benefits awarded for children born before a claimant became eligible for LTD benefits. *See* Dkt.

24  No. 278-19 at 40, AR 3418; Dkt. No. 278-16 at 42, AR 3011; Dkt. No. 278-16 at 40, AR 3009.

25  Moreover, the court agrees with the Claims Administrator that "[a]s a practical matter, a

26  participant continues to be eligible and entitled to benefits for each subsequent monthly or partial

27  monthly period for which s/he is Totally Disabled." *Id.*

28

08-cv-03971-RMW
ORDER RE MOTIONS FOR SUMMARY JUDGMENT
FC

1    Plaintiff makes a second argument for why the offset provision cannot be applied to her.

2   According to plaintiff, her children, rather than plaintiff herself, are "entitled" to the dependent

3   SSDI benefits from the SSA. The court does not find this interpretation persuasive. The Plan

4   defines Social Security Benefits as including family benefits. Plaintiff does not dispute that the

5   dependent SSDI was awarded due to plaintiff's disability, and the SSA family award notices

6   expressly designate plaintiff as the payee and authorize her to use the funds. *See* Dkt. Nos. 278-18

7   at 44, AR 3257, 278-18 at 47, AR 3260 ("We have chosen you to be his representative payee.

8   Therefore, you will receive his checks and use the money for his needs."). Defendants did not

9   abuse their discretion in offsetting dependent SSDI from plaintiff's LTD benefits.

**B.      Statute of Limitations**

11    Plaintiff also argues that defendants' application of the offset should be barred by the

12   statute of limitations. Defendants are not suing for restitution or reimbursement. They are merely

13   defending against plaintiff's claim for reinstatement of her LTD benefits without the offset. There

14   is no claim by defendants that could be barred by a statute of limitations.

**C.      Doctrine of Waiver**

16    Nor is the doctrine of waiver applicable to this case. Plaintiff cites *Burger v. Life Insurance*

17   *Co. of North America* to argue that defendants waived the right to apply an offset for plaintiff's

18   dependent SSDI benefits because MetLife knew of plaintiff's dependents for many years before

19   applying the offset. In *Burger,* the claims administrator overpaid the plaintiff for three years by

20   failing to offset plaintiff's LTD benefits to account for his part-time employment income. 103 F.

21   Supp. 2d 1344, 1345-46 (N.D. Ga. 2000). The *Burger* court found "compelling evidence" that the

22   claims administrator "voluntarily relinquished" its right to reduce the plaintiff's payments because

23   plaintiff had informed the claims administrator "on several occasions" about his part-time

24   employment. *Id.* at 1348-49. The *Burger* court, however, applied waiver only with respect to

25   defendant's claim for restitution, noting that "[o]bviously, there was no voluntary or intentional

26   relinquishment of a known right as to benefits payable after July 1998," when defendant

27   discovered its mistake and began applying an offset to account for his part-time work. *Id.* at 1349.

28

United States District Court
Northern District of California

14

1    In the present case, defendants are not seeking reimbursement or restitution. Whether or not

2    defendants knew that plaintiff had children before applying the offset, defendants did not

3    voluntarily give up the right to offset benefits not yet paid to plaintiff.

4        **D.    California Insurance Code**

5        In her opposition brief, plaintiff argues that the Plan's offset provision is void under

6    California Insurance Code § 10127: "Any provision contained in a policy of . . . a self-insured

7    employee welfare benefit plan for a reduction of loss of time benefits during a benefit period

8    because of an increase in benefits payable under the federal Social Security Act, as amended, shall

9    be null and void with respect to any such increase which occurs on or after the effective date of

10   this section." Cal. Ins. Code §10127.15; *see also* § 10127.1(b) ("No self-insured employee welfare

11   benefit plan providing loss of time benefits shall contain any provision for a reduction of such

12   benefits during a benefit period because of an increase in benefits payable under the Federal Social

13   Security Act, as amended."). However, "any and all State laws insofar as they may now or

14   hereafter relate to any employee benefit plan" are superseded by ERISA. 29 U.S.C. § 1144.

15   **IV.    CLAIM FOR RETROACTIVE REINSTATEMENT UNDER *PANNEBECKER***

16       Plaintiff argues that even if defendants' Plan interpretation prevails, plaintiff is entitled to

17   reinstatement of her LTD benefits without the offset under *Pannebecker v. Liberty Life Assurance*

18   *Co. of Boston*. The Ninth Circuit recognizes a distinction in the appropriate remedy for an "ERISA

19   claimant whose initial application for benefits has been wrongfully denied" and a "claimant whose

20   benefits have been terminated." *Pannebecker*, 542 F.3d 1213, 1221 (9th Cir. 2008). Where an

21   administrator's initial denial of benefits is premised on a failure to apply plan provisions properly,

22   the appropriate remedy is to "remand to the administrator to apply the terms correctly in the first

23   instance." *Id*. However, "if an administrator terminates continuing benefits as a result of arbitrary

24   and capricious conduct, the claimant should continue receiving benefits until the administrator

25   properly applies the plan's provisions." *Id.*

26       In *Pannebecker*, the plaintiff "was already receiving benefits, and, but for [defendant's]

27   arbitrary and capricious conduct—i.e., its failure to apply the terms of the Plan properly—she

28

08-cv-03971-RMW
ORDER RE MOTIONS FOR SUMMARY JUDGMENT
FC

United States District Court
Northern District of California

would have continued receiving them." The Ninth Circuit held that "the district court should have awarded Pannebecker benefits from the time of [the] improper denial" through the time of the proper denial. *Pannebecker*, 542 F.3d at 1221-22. "[W]hether the administrator abused its discretion because the decision was substantively arbitrary or capricious, or because it failed to comply with required procedures, benefits may still be reinstated if the claimant would have continued receiving benefits absent the administrator's arbitrary and capricious conduct." *Id.* at 1221.

As discussed above, the court finds no abuse of discretion by defendants in applying the offset. To the extent plaintiff argues that she would have continued receiving LTD benefits without the offset "but for" MetLife's erroneous decision to terminate her LTD benefits, *Pannebecker* is distinguishable. While MetLife's subsequent reinstatement of plaintiff's LTD benefits implies that the initial termination was a mistake, the court has no basis for a finding that MetLife was arbitrary or capricious in terminating plaintiff's LTD benefits. More importantly, in *Pannebecker*, the initial termination of benefits was a direct result of the administrator's failure to reasonably investigate facts and properly apply plan provisions; in this case, if plaintiff's LTD benefits had continued uninterrupted, MetLife would still have been in a position to apply the offset. Therefore, plaintiff's claim for retroactive reinstatement of her LTD benefits without the offset under *Pannebecker* is denied, and defendants' motion for summary judgment is granted.

## V.    CLAIM FOR SECTION 1132(C) PENALTIES

Plaintiff seeks penalties under 29 U.S.C. § 1132(c)(1)(B), alleging that defendants failed to provide certain documents in response to plaintiff's requests. Defendants argue as an initial matter that LINA cannot be liable for penalties because § 1132(c) applies only to a plan administrator—not a claims administrator. Plaintiff, on the other hand, contends that LINA is liable as a de facto plan administrator. The court notes that plaintiff does not appear to assert a penalties claim against LINA in the complaint. *See* Dkt. No. 244 at 10 (Fifth Claim for Relief "Against Merck I, Merck Sharp & Dohme Corp, and Merck II"). In any case, the court need not decide whether LINA may be liable as a de facto administrator because defendant has not established a statutory violation by

08-cv-03971-RMW
ORDER RE MOTIONS FOR SUMMARY JUDGMENT
FC

United States District Court
Northern District of California

1    any defendant.

2        **A.  Statutory Obligation to Provide Documents**

3            Under 29 U.S.C § 1132(c)(1)(B), a plan administrator "who fails or refuses to comply with

4    a request for any information which such administrator is required *by this subchapter* to furnish to

5    a participant or beneficiary . . . may in the court's discretion be personally liable to such

6    participant or beneficiary in the amount of up to $100[11] a day from the date of such failure or

7    refusal . . ." (emphasis added). Under § 1024(b)(4) of the same subchapter, an administrator must

8    "furnish a copy of the latest updated summary, plan description, and the latest annual report, any

9    terminal report, the bargaining agreement, trust agreement, contract, or other instruments under

10   which the plan is established or operated" upon written request of a participant or beneficiary. The

11   term "other instruments under which the plan is established or operated" has been interpreted to

12   mean "documents similar in nature to those specifically identified, which describe the terms and

13   conditions of the plan, as well as its administration and financial status." *Hughes Salaried Retirees*

14   *Action Comm. v. Adm'r of Hughes Non-Bargaining Ret. Plan*, 72 F.3d 686, 689 (9th Cir. 1995).

15   Plaintiff does not cite any other provision of 29 U.S.C. Ch. 18, Subchapter I which would support

16   her claim for penalties. Therefore, to sustain a claim for penalties under § 1132(c)(1)(B), plaintiff

17   must establish that defendants failed to provide documents "under which the plan is established or

18   operated." *See* 29 U.S.C. § 1024(b)(4).

19       **B.  Regulatory Obligation to Provide Documents**

20           Plaintiff also relies on *Sgro v. Danone Waters of North America, Inc.* to argue that §

21   1132(c)(1)(b) penalties are available for defendants' failure to provide documents in accordance

22   with 29 C.F.R. § 2560.503-1(h)(2)(iii). Section 2560.503-1(h)(2)(iii) of the ERISA regulations

23   requires that an administrator provide a claimant with copies of "all documents, records, and other

24   information relevant to the claimant's claim for benefits" upon request by the claimant. The court

25   is not convinced that § 1132(c)(1)(b) penalties may be awarded for failure to comply with

26

27   _____

     [11] The $100 penalty limit has been increased to $110 by regulation. *See* 29 C.F.R. § 2575.502c-3.

28
                                                    17

United States District Court
Northern District of California

ERISA's implementing regulations under *Sgro*.

In *Sgro*, plaintiff sought § 1132(c)(1)(b) penalties for failure to comply with 29 C.F.R. § 2560.503-1(h)(2)(iii) without specifying which of the two co-defendants—the claims administrator and the plan administrator—had failed to comply with plaintiff's request for documents. 532 F.3d 940, 944-45 (9th Cir. 2008). The Ninth Circuit affirmed the dismissal of plaintiff's penalty claim against the claims administrator because §1132(c)(1) "only gives . . . a remedy against the plan administrator," but granted plaintiff leave to amend his penalties claim against the plan administrator. *Id.* at 945. In so ruling, the Ninth Circuit noted that plaintiff's penalty claim was based on alleged violation of ERISA regulations and stated that "ERISA's remedies provision gives Sgro a cause of action to sue a plan 'administrator' who doesn't comply with a 'request for ... information.'" *Id.* (citing 29 U.S.C. § 1132(c)(1))."

In *Care First Surgical Center v. ILWU-PMA Welfare Plan*, the district court examined *Sgro*, concluding that the "discussion of a plaintiff's ability to recover penalties for failure to disclose documents required by the regulations is dicta." No. CV 14-01480 MMM AGRX, 2014 WL 6603761, at *23 (C.D. Cal. July 28, 2014). Specifically the court found that despite "what appears to be an implicit affirmation by the *Sgro* court that plaintiffs can sue for penalties under § 1132(c) when a plan or plan administrator fails to produce documents required by § 2560.503-1," the plain language of the statute provides for penalties only for violations of the same subchapter. *Id.* at *23 (C.D. Cal. July 28, 2014); *see also Konty v. Liberty Life Assurance Co. of Boston*, Civil No. 3:12–CV–00467–KI, 2012 WL 5363545, at *4 (D. Or. Oct. 30, 2012) ("*Sgro* is not dispositive on this issue because the court never reached it").

Many other courts have reached the same conclusion—that § 1132(c) only permits penalties for violations of the disclosure requirements of the statute itself, not the requirements of ERISA's implementing regulations. *See, e.g.*, *Brown v. J.B. Hunt Transp. Servs., Inc.*, 586 F.3d 1079, 1089 (8th Cir. 2009) ("Even if we assume the relevant regulations to § 1133 require a plan administrator to disclose claims manuals to plan participants, *see, e.g.,* 29 C.F.R. § 2560.503–1(h)(2)(iii) . . . we agree with our sister circuits that a plan administrator may not be penalized

08-cv-03971-RMW
ORDER RE MOTIONS FOR SUMMARY JUDGMENT
FC

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

1   under § 1132(c) for a violation of the regulations to § 1133."); *Wilczynski v. Lumbermens Mutual*

2   *Casualty Co.*, 93 F.3d 397, 405–07 (7th Cir. 1996) ("the sanctions imposed by [§ 1132(c)] may

3   not be imposed for the violation of an agency regulation"); *Groves v. Modified Retirement Plan*

4   *for Hourly Paid Employees of Johns Manville Corp. & Subsidiaries*, 803 F.2d 109, 116-18 (3d

5   Cir. 1986) ("Because § 502(c) authorizes penalties only for breach of duties impose by 'this

6   subchapter,' such sanctions cannot be imposed for violation of an agency regulation."); *Prado v.*

7   *Allied Domecq Spirits and Wine Group Disability Income Policy*, 800 F. Supp. 2d 1077, 1101

8   (N.D. Cal. 2011) (holding that "[b]y its terms, section 1132(c) is limited to information required

9   by 'this subchapter,'" and as such "does not extend to documents identified in 29 C.F.R. §

10  2560.503-1"). Aside from *Sgro*, plaintiff does not cite to any authority to the contrary. The court

11  finds that § 1132(c)(1)(B) penalties are not available for violations of § 1133's implementing

12  regulations; although ERISA regulations may require defendants to provide plaintiff with

13  documents relating to her benefits claim, plaintiff cannot recovery penalties for defendants' failure

14  to comply with such regulatory obligations.

15          **C.      Plaintiff's Document Requests**

16          The court examines, therefore, whether plaintiff has established that defendants violated a

17  statutory obligation to provide the documents under which the Plan is established or operated. *See*

18  29 U.S.C. § 1024(b)(4). It is difficult for the court to identify the specific unmet document

19  requests for which plaintiff seeks penalties, but plaintiff's motion lists three groups of unproduced

20  documents:

21          •       claims activity diary and notes and analysis on the offset issue;

22          •       the Koller emails, the LINA offset guideline, an adequate claims activity
                    diary, notes and analysis of claims personnel and staff attorneys, attorney
23                  communications; and

24          •       information and documents.

25  Dkt. No. 338 at 24-25.

26          A request for "information and documents" is too vague to support a penalties claim.

27  Almost all of plaintiff's document categories relate to plaintiff's benefits claim under the plan, and

28                                                    19

United States District Court
Northern District of California

1    such documents cannot serve as the basis for plaintiff's penalties claim. *See Kaminskiy v.*

2    *Kimberlite Corp.*, No. C-14-0418 MMC, 2014 WL 2196191, at *5 (N.D. Cal. May 27, 2014) ("the

3    documents pertain only to plaintiff individually, and, consequently, are not 'similar in nature' to

4    any document described with particularity in § 1024(b)(4)").

5           Only "the LINA offset guideline" might be considered a document under which the Plan is

6    established or operated. As defendants point out, however, a document describing LINA's general

7    guidelines for "SSDI Dependents offsets" is part of the administrative record that was filed with

8    this court on July 15, 2015. Dkt. No. 278-16 at 3013-16. To the extent that plaintiff argues that

9    defendants took too long to produce the LINA offset guidelines, plaintiff does not sufficiently

10   identify the date or the recipient of her request. Therefore, the court finds that plaintiff does not

11   allege any violation for which penalties may be awarded under §1132(c)(1)(B) in her motion for

12   summary judgment.

13          In her opposition briefs, plaintiff asserts that defendants failed to provide a copy of the

14   Merck 1994 Plan and SPD for the MSD Plan, the Merck 1994 Plan, and the individual LTD Plans

15   in response to a December 23, 2013 request from plaintiff.[12] *See* Dkt. No. 343 at 22. Emails from a

16   Merck paralegal to plaintiff's counsel on January 3 and 4, 2014 show that, in response to

17   plaintiff's request, Merck provided certain requested documents to plaintiff, informed plaintiff that

18   other documents did not exist, and requested that plaintiff's counsel follow up if he needed any

19   other documents. *See* Dkt. No. 345-18 at 2-4.

20          To the extent plaintiff argues that defendants had an obligation to create the requested

21   SPDs not already in existence, the court is unpersuaded. *See* Dkt. No. 343 at 22 (citing *Cline v.*

22   *Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1234 (9th Cir. 2000) ("with respect to

23   current documents, if any of these documents do not exist at the time of a request, it is consistent

24   with the aims of ERISA to impose a penalty on the plan administrator because there is nothing

25   keeping the administrator from preparing a mandatory document where none previously existed,

26

27   [12] In her reply brief, plaintiff similarly asserts that an "SPD of the MSD Combined Plan was not
     provided," but without identifying a corresponding document request.

28
     08-cv-03971-RMW
     ORDER RE MOTIONS FOR SUMMARY JUDGMENT
     FC

United States District Court
Northern District of California

1    and it is his burden upon threat of penalty to do so")). Such an obligation would only apply to

2    current documents, however, and plaintiff's requests seem to relate to SPDs for earlier versions of

3    the plan. In any case, plaintiff's request for SPDs was purely conditional. *See* Dkt. No. 277 at 59-

4    60 ("If there are separate SPDs for these plans, please send them.").

5           On March 10, 2015, defendants filed with this court "all of the Plan documents,

6    amendments and restatements thereto, and summary plan descriptions, for the various incarnations

7    of the long term disability plan ("Plan") and regarding long term disability benefits applicable to

8    plaintiff since 1991." Dkt. No. 265. This filing included SPDs for the MSD Plan for 2011 and

9    2012, as well as "the only new, revised or amended Plan documents issued or created for the year

10   1994" on March 10, 2015. *See* Dkt. No. 265 ¶¶ 11, 13-14, 41; Exs. 8, 10-11, 29-31. It is not clear

11   to the court that any requested documents are missing from this filing.

12          Based on this record, the court finds that plaintiff has not alleged any violation for which

13   penalties may be awarded under §1132(c)(1)(B) in her motion, reply, or opposition. Therefore,

14   plaintiff's motion for summary judgment on her penalty claim is denied. Defendants' motion for

15   summary judgment on plaintiff's penalty claim is granted.

16   **VI.    CONCLUSION**

17          For the reasons stated herein, the court:

18      1)  denies plaintiff's motion for summary judgment that the SSDI offset is not allowed under
     the plan and grants defendants' motion for summary judgment of no abuse of discretion in
19   applying the SSDI offset;

20      2)  denies plaintiff's motion to reinstate benefits in the amount deducted for the SSDI offset
     for the period between August 1, 2008 to date under *Pannebecker* and grants defendants'
21   motion for summary judgment of no reinstatement of benefits under *Pannebecker*; and

22      3)  denies plaintiff's motion for summary judgment for 502(c) penalties and grants
23   defendants' motion for summary judgment of no 502 (c) penalties.

24          **IT IS SO ORDERED.**

25   Dated: June 14, 2016

26                                                    *Ronald M. Whyte*

27                                                    Ronald M. Whyte
                                                      United States District Judge
28
                                         21